# Staunton.

## AMERICAN SURETY COMPANY v. J. E. HANNAH AND OTHERS.

### November 12, 1925.

1. SURETYSHIP—*Action Against Surety—Evidence to Prove Defalcation— Deputy Treasurer—Case at Bar.*—In the instant case, a suit involving the liability of a surety on the bond of a deputy treasurer for defalcations of the deputy, it was argued that it was not sufficient to prove that the treasurer had sustained loss in money, but in addition the treasurer must prove under the terms of the bond that the loss was due to fraud, dishonesty, forgery, theft, wrongful abstraction or misapplication by the deputy, and that the only competent way to do this was by the introduction of each taxpayer in the deputy's district as a witness, to show that he pa·d the deputy the amount of his tax ticket, and then prove that the deputy failed to account for the payment. This would have necessitated the examination of several thousand taxpayers. In a criminal case, the guilt of the defendant may be shown by competent evidence, circumstantial as well as direct, to the exclusion of every reasonable doubt.

   *Held:* That the rule should not be more stringent in a civil case than in a criminal case, and that the fact that the deputy was a defaulter might be shown by the circumstances without calling all the taxpayers of the district.

2. SURETYSHIP—*Action Against Surety—Evidence to Prove Defalcation— Deputy Treasurer—Finding of Commissioner on Conflicting Evidence— Case at Bar.*—In the instant case, a suit involving the liability of a surety on the bond of a deputy treasurer for defalcations of the deputy, it was proved that after allowing the deputy proper credits, he was a defaulter. This was the finding of the master commissioner, who saw the witnesses, heard them testify, and whose finding was sustained by the chancellor.

   *Held:* That, this being true, on appeal it was unnecessary to discuss conflicts in the testimony.

3. MASTER IN CHANCERY—*Report of Commissioner—Weight of.*—The report of a commissioner, when the evidence has been taken in his presence, is entitled to great weight and should not be disturbed unless its conclusions are clearly unsupported by the evidence.

4. WITNESSES—*Transaction with Deceased Person—Liability of Surety on the Bond of Deceased Deputy Treasurer—Treasurer as Witness.*— In the instant case, a suit involving the liability of a surety on the bond o˙ a deputy treasurer for defalcations of the deputy, it was contended by the surety that the finding of the commissioner that the deceased deputy was a defaulter to a certain amount was based upon the uncorroborated evidence of the treasurer, which was contrary to the provisions of section 6209 of the Code of 1919, providing that i˙ a party is incapable of testifying the testimony of the other party must be corroborated. The surety was a corporation and its agent was living and capable of testifying.

   *Held:* That the treasurer was a competent witness under section 3346 of the Code of 1904, and did not have to be corroborated, notwithstanding the provision of section 6209 of the Code of 1919.

5. SURETYSHIP—*Fraud in Procuring Bond—Necessity of Alleging Fraud—Case at Bar.*—In the instant case, a suit involving the liability of a surety on the bond of a deputy treasurer for defalcations of the deputy, the surety claimed that the answers given in a "general statement" sent by the surety to the treasurer before the execution of the bond were false, and that the surety was induced by fraud to execute the bond. The bond contained no reference to the "general statement" and did not in any wise purport to have been executed on the faith of the answers contained in the statement. No defense of fraud in the procurement of the bond was set up in the answer of the surety.

   *Held:* That if the surety intended to rely on the question of fraud, it was incumbent upon it to allege fraud in the answer and thus put the treasurer upon notice.

6. SURETYSHIP—*Fraud in Procuring Bond—Admission that Surety Executed Bond—Case at Bar.*—In the instant case, a suit involving the liability of a surety on the bond of a deputy treasurer for defalcations of the deputy, the surety claimed that the treasurer induced it by fraud to execute the bond. The only allegation in the answer of the surety with reference to the bond was that it admitted that it did execute as surety the bond in question, which admission would seem to preclude the idea that the bond was fraudulently obtained.

7. FRAUD AND DECEIT—*Misrepresentation—Acting on Representation.*— Unless an untrue statement is believed and acted upon, it can occasion no legal injury. It is essential, therefore, that the party addressed should trust the representation and be so thoroughly induced by it that, judging from the ordinary experience of mankind, in the absence of it he would not, in all reasonable probability, have entered into the contract or other transaction.

8. FRAUD AND DECEIT—*Equity—Allegation of Fraud.*—While a formal plea is unnecessary in a suit in equity, it must appear from the pleadings that fraud is relied upon to defeat a recovery.

9. EQUITY—*Pleadings—Decree.*—A court of equity can decree only upon the case made by the pleadings. This is especially true where fraud is relied on as established by the proof.

10. SURETYSHIP—*Surety of Deputy Treasurer—Notice of Defalcation—Finding of Lower Court as to Notice.*—In a suit involving the liability of a surety on the bond of a deputy treasurer for defalcations of the deputy, the bond contained a provision that notice should be given the surety within ten days after the discovery of the loss. The evidence of when the loss was discovered was in hopeless conflict.

  *Held:* That the Supreme Court of Appeals being in no better position to determine the matter than the trial court, the decision of the question by the trial court against the surety must stand.

11. SURETYSHIP—*Bond of Deputy Treasurer—Estoppel of Treasurer to Claim for Loss under Bond—Case at Bar.*—In the instant case, a suit involving the liability of a surety on the bond of a deputy treasurer for defalcations of the deputy, the surety contended that the treasurer was estopped to make claim against the surety on the bond, because a "general statement" signed by the treasurer before the execution of the bond stated that the treasurer should require a settlement of the deputy every month. The bond contained no reference to the "general statement" and did not in any wise purport to have been executed on the faith of the answers contained in the statement.

  *Held:* That the treasurer was not estopped to assert the liability of the surety.

Appeal from a decree of the Circuit Court of Botetourt county. Decree for complainant. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*E. R. F. Wells, James P. Hart* and *Wolcott, Wolcott & Lankford,* for the appellant.

*Wm. R. Allen, H. S. Reid* and *Benj. Haden, Jr.,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

On January 1, 1916, J. E. Hannah qualified as treasurer of Botetourt county and received from his

predecessor in office the uncollected tax tickets for the year 1915. The tickets so received included uncollected tax tickets for Buchanan magisterial district, amounting to the sum of $8,744.35. After his induction into office, Hannah appointed J. A. Gilbert deputy treasurer for the Buchanan district, and delivered to him the tax tickets received from the retiring treasurer.

Upon the qualification of Gilbert he entered into a contract with Hannah by the terms of which he obligated himself, for a certain compensation, to be responsible for all of the tax tickets coming into his hands as such deputy, except those tickets which were returned delinquent in the manner provided by statute. In this contract Gilbert also obligated himself to protect Hannah by the execution of a bond in his favor with approved security in the penalty of $10,000.

Pursuant to the terms of the contract, Gilbert made application to the appellant to become surety on his bond as deputy treasurer, and accordingly a bond was duly executed by J. A. Gilbert as principal, and the appellant as surety, in the penalty of $10,000. This bond is as follows:

"*Form F. 15   Continuous Individual.   Public Official.

(Stamp 50c)

"AMERICAN SURETY COMPANY
OF NEW YORK
"CAPITAL AND SURPLUS OVER $6,000,000.

"Company's Office Building,
"100 Broadway, New York.
"Amount $10,000.00                    Premium $50.00.

"We, James A. Gilbert, as principal, hereinafter called the 'employe,' and the American Surety Company of New York, as surety, bind ourselves to pay Joseph E. Hannah, treasurer, Botetourt county, Va., as employer, such pecuniary loss, not exceeding ten thousand ($10,000.00) dollars, as said employer shall have sustained of money or other personal property (including that for which employer is responsible) by an act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or misapplication on the part of said employee, directly or through connivance with others, while holding the position of deputy treasurer in the employ of said employer and during the period commencing January first, 1916, and ending with the termination of this suretyship by the retirement of the employee from his said position, the discovery of loss hereunder, or the cancellation of this suretyship by the employer or the surety.

"Provided, however,

"1. That loss be discovered during the continuance of this suretyship or within fifteen months next after its termination and notice thereof delivered to the surety, at its home office in the city of New York, within ten days after such discovery.

"2. That claim, if any, be submitted by the employer in writing showing the items and the dates of the losses, and delivered to the surety, at its home office, within three months after such discovery, and the surety shall have two months after such claim has been presented in which to verify and make payment. In the meantime no suit, action or proceeding shall be brought against the surety by the employer, nor after the expiration of twelve months after the delivery of such statement or claim.

"3. In the event that the loss exceeds the amount

of this suretyship the employer and the surety shall share with each other pro rata in any net recovery, except recovery upon or from other suretyship for such employer, in the proportion that the amount of payment under this suretyship bears to the total shortage.

"4. The amount of this suretyship may, on written application of the employer, be increased or decreased by the surety without impairing the continuity thereof.

"5. This suretyship may be terminated by the surety upon thirty days' notice to the employer, and likewise the employer may terminate this suretyship by notice in writing to the surety, specifying the date of cancellation. Thereupon the surety shall refund the unearned premium if no claim has been paid.

. "In witness whereof the employee, as principal, and the surety, have hereunto set their hands and seals this fourteenth day of January, 1916.

"(Signed) K. W. Henderson, witness.

"Attest:

"(Signed) George W. Ames,
        Resident Assistant Secretary,
            at Richmond, Virginia.

> "(Signed) J. A. Gilbert,
>             Principal.

"AMERICAN SURETY COMPANY OF
                        NEW YORK
        "By F. Whapentz."

It is a conceded fact in the cause that, at the time of the execution of this bond, the appellant was not

aware of the agreement between Gilbert and Hannah. From the date of his qualification on the first of January, 1916, to the time of his decease, which occurred on the 24th day of February, 1922, Gilbert continued to discharge the duties of his office, the appellee, Hannah, having been re-elected treasurer in 1919.

The method of bookkeeping adopted by appellee was to keep "a running account" between himself and Gilbert; that is, appellee kept a record of the aggregate tax tickets placed in the hands of Gilbert for collection for each year, and credited Gilbert with the amounts collected by him, and also with the amount of the delinquent list approved by the Board of Supervisors of the county.

Appellee testified that this was the usual method employed by county treasurers in keeping their accounts with the deputy treasurers. He further testified that it was frequently the case that his deputies had numerous uncollected tax tickets on hand when the demand for money upon the treasurer was great, and that, on two separate occasions, he took a note from Gilbert for the purpose of using same as collateral to procure money from the county banks, but that on each of these occasions he gave Gilbert credit for the net amount of the notes.

Upon the death of Gilbert, appellee began an investigation of the tax affairs of his deputy, which resulted in the disclosure of a shortage in his accounts.

In a suit instituted by the heirs of J. A. Gilbert to partition his estate, appellee filed his petition, seeking a recovery for the amount alleged to be due by reason of the defalcation of Gilbert as deputy treasurer. To this petition the appellant was made a party defendant and filed its answer in the cause.

Upon the report of the master commissioner,

appointed to ascertain the liability, if any, of the appellant upon its suretyship, together with the evidence taken, the cause was heard by the chancellor and a decree entered, fixing the liability of the appellant to the appellee in the principal sum of $7,494.99.

[1] It is assigned as error that "there is no evidence to show that Gilbert was in default to Hannah, as defined in the bond executed by the appellant."

The main contention is that before appellant can be held liable under the bond, it must be proved by evidence that appellee has sustained loss in money by fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or misapplication by his deputy, Gilbert.

It is argued that it is not sufficient to prove that appellee sustained loss in money, but in addition to that he must prove that the loss in money was due to one or more of the acts enumerated, and that the only competent way to do this is by the introduction of each taxpayer of Buchanan district, as a witness, to show that he paid Gilbert the amount of his tax ticket, and then prove that Gilbert failed to account for the payment. To carry this suggestion into execution would necessitate the examination, as witnesses, of between twenty-five hundred and three thousand taxpayers. To require this to be done would impose upon a litigant of ordinary financial means an oppressive burden, and in some cases would amount to a denial of justice, for, under our practice, a witness in a civil case has the right to demand an allowance, from the party in whose behalf he is summoned, for one day's attendance and his mileage and tolls. In a criminal case, the rule is that the guilt of the defendant must be shown by competent evidence to the exclusion of every reasonable doubt. This may be done by circumstantial as well as by direct evidence.

We cannot perceive why the rule should be more stringent in a civil case than in a criminal case.

[2] The appellee proved, and the circumstances show, that after allowing Gilbert proper credits, he was a defaulter to the amount of the sum decreed. This is the finding of the master commissioner, who saw the witnesses, heard them testify, and whose finding is sustained by the chancellor. Where this is true, it is unnecessary to discuss conflicts in the testimony.

[3] In *Ingram* v. *Ingram*, 130 Va. 329, 107 S. E. 653, 26 A. L. R. 1175, Prentis, J., said: "It is sufficient to say that we agree with the conclusion of the commissioner and of the trial court, and that even if we had any fair doubt as to their correctness, we would affirm the decree and follow the familiar rule, so often emphasized, that the report of a commissioner, when the evidence has been taken in his presence, is entitled to great weight and should not be disturbed unless its conclusions are clearly unsupported by the evidence, and such a report on the value of property based upon conflicting testimony and sustained by the trial court will not be overruled on appeal. *Cottrell* v. *Mathews*, 120 Va. 847, 92 S. E. 808; *Va. Lumber & Extract Co.* v. *O. D. McHenry Lumber Co.*, 122 Va. 111, 94 S. E. 173."

[4] It is earnestly contended, however, that the finding of the master commissioner was based upon the uncorroborated evidence of appellee, which is contrary to the provisions of section 6209 of the Code. We are of the opinion there is no merit in this contention. One of the parties to the bond sued on was a corporation. The agent of the corporation is living and is capable of testifying. Therefore, Hannah is a competent witness under the provisions of section 3346 of the Code of 1904, and does not have to be corroborated.

[5] It is further contended in the brief of appellant that appellant executed the bond on the faith of the answers contained in a "general employer's statement" signed by appellee. It developed during the taking of evidence that about three weeks before the bond was executed, a statement called "employer's general statement" was sent to appellee; this statement contains the admonition, "your answers will constitute a basis of the said bond, or any new bond, if issued."

In January, 1920, another "general statement" was sent to appellee containing the same admonition, which was filled out and signed by appellee.

The claim of the appellant in the brief is that the answers given in the general statement were false, and appellant was induced by fraud to execute the bond.

The bond in question contains no reference to the "general statements" and does not in any wise purport to have been executed on the faith of the answers contained in the statement. No defense of fraud in the procurement of the bond is set up in the answer of appellant. If the appellant intended to rely on the question of fraud, it was incumbent upon it to allege fraud in the answer and thus put the appellee upon notice.

[6] The only allegation in the answer of appellant with reference to the bond is "that it admits that it did execute, as surety for the said J. A. Gilbert, the bond to the said petitioner as treasurer of Botetourt county, Virginia, a copy of which is filed with the amended petition as 'Exhibit C.' " This admission would seem to preclude the idea that the bond was fraudulently obtained.

[7] In 2 Pom. Eq., section 890, it is stated: "Unless

an untrue statement is believed and acted upon, it can occasion no legal injury. It is essential, therefore, that the party addressed should trust the representation, and be so thoroughly induced by it that, judging from the ordinary experience of mankind, in the absence of it he would not, in all reasonable probability, have entered into the contract or other transaction."

[8] In *Guarantee Co.* v. *National Bank*, 95 Va. 490, 28 S. E. 909 (which was an action at law) the defense of fraud in the procurement of the contract was set up by a plea. While a formal plea is unnecessary in a suit in equity, it must appear from the pleadings that fraud is relied upon to defeat a recovery.

[9] In *Fleenor* v. *Hensley*, 121 Va. 374, 93 S. E. 584, it is said: "A court of equity can decree only upon the case made by the pleadings. This is especially true where fraud is relied on as established by the proof. It must be distinctly alleged in the pleadings, otherwise it cannot be the basis of any decree. An answer must aver all the essentials of the defense."

Whatever merit there may be in the position taken in the brief, the character of the transaction is not properly put in issue by the pleadings in the cause.

[10] It is also assigned as error that appellee failed to notify appellant of Gilbert's defalcation within ten days after such discovery. In the bond is the provision that if loss be discovered during the continuance of the suretyship, or within fifteen months next after its termination, notice must be given appellant of such loss within ten days after such discovery.

The evidence on the question of when the loss was discovered is in hopeless conflict. This being true, this court is not in any better position to determine the matter than the trial court was. The trial court having decided that issue against the appellant, we are unwilling to disturb its holding in this regard.

[11] On behalf of the appellant, it is also contended that appellee "is estopped to make claim against the American Surety Company on this bond;" and in support of this contention appellant relies on the answers contained in the "general statement" that appellee would require a settlement of Gilbert every month and also require Gilbert to make weekly deposits of the money collected. What has been said on the question of fraud, *supra*, is pertinent in this connection. We are of the opinion there is no merit in this contention.

Upon the whole case, we are of the opinion that the judgment of the circuit court should be affirmed.

*Affirmed.*