38

## CIRCUIT COURT OF FAIRFAX COUNTY

Jared and Donna Murayama 1997 Trust,
through its trustee,
Jared Murayama

    v.

NISC Holdings, L.L.C.,
Thomas Campbell,
International Business
Machines Corp.,
and DC Capital Partners, L.L.C.

Case No. CL-2010-8635

By JUDGE JONATHAN C. THACHER

September 13, 2010

This matter comes to the Court on Defendants' Demurrer. Upon consideration of the pleadings, arguments of counsel, and the applicable governing authorities, the Court sustains Defendants' Demurrer.

*Background*

On June 16, 2010, Plaintiff Jared and Donna Murayama 1997 Trust ("Murayama Trust") filed suit in this Court against Defendants NISC Holdings, L.L.C. ("NISC"), chairman of NISC Thomas Campbell ("Mr. Campbell"), and International Business Machines Corporation ("IBM") (collectively "Defendants"). On August 6, 2010, Murayama Trust filed its First Amended Complaint against Defendants, alleging fraud in the

inducement (Count I), negligent misrepresentation (Count II), breach of fiduciary duty and duty of good faith and fair dealing (Count III), abuse of process (Count IV), and unjust enrichment (Count V). The pleadings and attachments thereto set forth the following facts, and, because this case is presented on demurrer the Court must accept these facts as true.

In 2007, Murayama Trust was the majority owner of Omen, Inc., an information technology management company based in Maryland. In June of 2007, Murayama Trust sold Omen, Inc., to NISC. As consideration for this sale, Murayama Trust received 48.78 percent of the Class A voting stock in NISC, a cash sum of $1,425,000 payable in November 2008, a significant portion of Class B shares in NISC, and a seat on NISC's board of directors.

In July 2007, Murayama Trust appointed Mr. Murayama to NISC's board of directors. This position entitled Mr. Murayama to notice of all board meetings and a right to inspect NISC's books and records. Nonetheless, Mr. Murayama was prevented from accessing the books, records, and activities of NISC and its affiliates. According to Murayama Trust, NISC and Mr. Campbell repeatedly ignored and/or refused Mr. Murayama's requests for such information.

In August 2009, NISC and IBM began negotiating the sale of NISC to IBM. Both NISC and IBM signed a confidentiality agreement to facilitate their discussions. NISC did not disclose these negotiations to Mr. Murayama or the Murayama Trust.

In November 2009, Mr. Campbell scheduled a board meeting to discuss the possible sale of NISC. At this meeting, Mr. Campbell informed the board that a sale of NISC was imminent, that NISC had retained an investment banking firm to facilitate any sale, and that NISC had received third-party purchase offers. Because Mr. Campbell did not notify Mr. Murayama of this meeting, Mr. Murayama was not present.

On November 9, 2009, NISC initiated a lawsuit against the non-profit organization Hawaii 5-0. Mr. Murayama acted as an advisor to Hawaii 5-0 when NISC filed suit. NISC did not include Mr. Murayama or the Murayama Trust in the lawsuit; however, the complaint made numerous allegations of misconduct directly against Mr. Murayama.

Within three days of filing the Hawaii 5-0 lawsuit, NISC delivered a copy of the Hawaii 5-0 complaint and a settlement agreement to Mr. Murayama. NISC threatened to join Mr. Murayama in the Hawaii 5-0 suit if he did not agree to the settlement, which demanded that Mr. Murayama and the Trust return its Class A shares of NISC without compensation.

Mr. Murayama retained counsel and attempted to renegotiate the proposed settlement. During these discussions, NISC failed to inform Mr. Murayama that NISC was actively negotiating a sale of the company. In fact, NISC's counsel affirmatively represented that a sale of NISC was not pending. NISC also failed to disclose their investment bank's opinion

valuing Murayama Trust's Class A shares over $2,000,000. Additionally, NISC knowingly withheld information regarding an offer from IBM.

On December 9, 2009, Mr. Murayama and the Murayama Trust executed a settlement agreement ("Settlement") with NISC. This Court can properly consider the December 9, 2009, Settlement agreement upon demurrer because Defendants annexed it to the Complaint in a motion craving oyer granted on July 27, 2010. The Settlement provides for the sale of Murayama Trust's Class A stock to NISC for $2,000,000, Mr. Murayama to resign from NISC's board, and NISC to abandon any claims against Mr. Murayama for his alleged misconduct in the Hawaii 5-0 lawsuit. The Settlement also contains the following provision, "NISC is considering and pursuing a range of strategic alternatives, including a sale of the company or a qualified public offering that could ultimately result in a different valuation" of the Class A shares. Also included within the Settlement is a no reliance clause, whereby Murayama Trust promised it was not relying on any representations outside of the Settlement. Furthermore, the Settlement contains the following release language:

> Murayama Trust . . . hereby irrevocably and unconditionally release, acquit, and forever discharge NISC, Omen, and their affiliates . . . from any and all claims, rights, demands, actions, liabilities, obligations, causes of action of any and all kinds . . . known or unknown, arising at anytime before the execution date of this Agreement . . . including, but not limited to, any and all claims which [Murayama Trust] . . . may now have or may have had, arising in any way whatsoever connected with . . . ownership of a Class A Membership Interest in NISC . . . and that the Parties specifically agree that this Agreement extends to claims which [Murayama Trust] . . . do not know or expect to exist in their favor. . . .

Mr. Murayama and the Murayama Trust did not object to any of the language or terms outlined above.

On January 20, 2010, IBM and NISC issued a press release announcing IBM's acquisition of NISC for approximately $367,000,000. Based on this price, the shares NISC purchased from Murayama Trust through the Settlement were re-sold for nearly $7,000,000 more than NISC paid for them.

Based on these facts, Murayama Trust filed the First Amended Complaint detailed above.

On August 13, 2010, Defendants filed the Demurrer at issue, which argues that the Amended Complaint fails to state a claim because Mr. Murayama entered into a global release of all known and unknown claims in the December 9, 2009, Settlement. According to Defendants, when a party

voluntarily enters into a global release of all known and unknown claims, he cannot later complain that he was "fraudulently induced because material information was, in fact, not disclosed" during negotiations. Defendants also propose, without citing to authority, a laundry list of other reasons that the Court should sustain the Demurrer: (1) Plaintiffs fraud claim lacks sufficient particularity; (2) "negligent misrepresentation" is not recognized in Virginia; (3) the "good faith" claim is not recognized in Virginia, and the "fiduciary duty" claim duplicates Plaintiff's contract theory; (4) the "abuse of process" claim presupposes that the Plaintiff successfully defeated a lawsuit in which it was a party; and (5) the unjust enrichment claim cannot stand where an express contract exists.

Murayama Trust filed a reply arguing that the Demurrer should be overruled because (1) a contract induced by fraud is unenforceable notwithstanding any provision of the contract purporting to bar all future claims between the parties; and (2) the Settlement documents are not properly before the Court in considering the Demurrer because the Court granted oyer with respect to the original Complaint but not the Amended Complaint.

## *Analysis*

The Court must first address Murayama Trust's argument that the Settlement documents are not properly before the Court on this Demurrer. Murayama Trust contends that the Court granted oyer to attach the Settlement with respect to the original Complaint and not the Amended Complaint, and thus the Court is barred from considering the Settlement on demurrer to the Amended Complaint.

This argument is not supported by the record. The Court granted Defendants' Motion Craving Oyer to attach the Settlement on July 27, 2010. On July 28, 2010, the Court granted Murayama Trust leave to amend their Complaint. The Court's order granting leave to amend specifically states that "Plaintiff's motion [to amend] is *subject to any Court Order on the Defendants' Motion Craving Oyer, argued on July 16, 2010, and taken under advisement by the Court*." (Emphasis added.) This language clearly orders that any amended complaint be subject to Defendants' Motion Craving Oyer. Thus, Murayama Trust's First Amended Complaint is subject to Defendants' Motion Craving Oyer as mandated by the Court's order dated July 28, 2010. Accordingly, the Settlement is properly before this Court on Defendants' Demurrer to the Amended Complaint.

Given the Settlement is properly before this Court, the Court will next address the merits of Defendants' Demurrer.

## A. *Demurrer Standard*

42

A demurrer tests the legal sufficiency of a pleading and should be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action. Va. Code Ann. § 8.01-273; *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 914 (2001). A demurrer presents only a question of law to be decided by the court. *Tazewell County Sch. Bd. v. Snead*, 198 Va. 100, 92 S.E.2d 497 (1956).

In ruling on a demurrer, the court must admit as true all of the material facts properly alleged, as well as those that may be fairly and justly inferred from those facts. *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). When a demurrant's motion craving oyer has been granted, the court in ruling on a demurrer may consider the facts alleged as amplified by any written attachment added to the record on the motion. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 398, 337 S.E.2d 744, 746 (1985). Moreover, a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of an authentic, unambiguous document admitted through craving oyer. *Wards v. Equip. Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

## B. *Defendants' Demurrer*

Defendants' main argument on demurrer is that Murayama Trust cannot state a valid cause of action in their Amended Complaint because Mr. Murayama released all claims against Defendants in the December 9, 2009, Settlement. In response, Murayama Trust argues that Count I of the Amended Complaint properly alleges NISC fraudulently induced the December 9, 2009, Settlement, and thus the Settlement must be considered void by this Court on demurrer. The Court will not address Defendants' additional arguments for demurrer because their main argument is dispositive, and they failed to cite any authority in support of these arguments.

It is a well settled principle of Virginia law that a fraudulently induced contract, compromise, or settlement is voidable. *See Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 220 Va. 109, 112, 255 S.E.2d 682, 683 (1979); *Nationwide Mut. Ins. Co. v. Martin*, 210 Va. 354, 357-58, 171 S.E.2d 239, 242 (1969). Furthermore, when fraudulent inducement is properly pleaded, the Court must accept as true that the disputed contract or settlement is void on demurrer. *See Robberecht Seafood, Inc.*, 220 Va. at 111-12, 255 S.E.2d at 683. Accordingly, this Court must accept that the Settlement, and release contained therein, is void if Murayama Trust properly pleaded fraudulent inducement in Count I of the Amended Complaint. Thus, before considering whether the Settlement release entitles Defendants to a demurrer, this Court must first determine whether Murayama Trust stated a valid claim of fraud in the inducement in Count I of the Amended Complaint.

The wrong of fraud requires an intentional, knowing misrepresentation by a defendant of a material fact upon which a plaintiff has relied to its detriment. *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984). To plead fraud in the inducement, it is essential that the defrauded party demonstrate reliance upon a material misrepresentation. *American Sur. Co. v. Hannah*, 143 Va. 291, 301, 130 S.E. 411, 414 (1925).

In the present case, Murayama Trust failed to plead a valid cause of action for fraud in the inducement. First, Murayama Trust failed to demonstrate in its pleadings any reliance upon Defendants' misrepresentations. The Settlement signed by Murayama Trust specifically contains a no reliance clause whereby Murayama Trust promised that it was not relying on any representations outside the Settlement. Although Murayama Trust now alleges reliance throughout the Amended Complaint, these factual allegations are contradicted by this term in the signed Settlement. Furthermore, Murayama Trust willingly agreed to this term with the advice of counsel. Under Virginia law, a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of a document properly admitted through craving oyer. *See Wards*, 254 Va. at 382, 493 S.E.2d at 518. In this case, the Court feels it is appropriate to ignore Murayama Trust's allegations of reliance because they are inapposite with the no reliance clause agreed to by Murayama Trust.

Furthermore, Murayama Trust failed to demonstrate any material misrepresentation or omission by Defendants. Murayama Trust alleges in the Amended Complaint that Defendants omitted to inform Mr. Murayama of an impending sale of NISC to IBM and that Defendants orally misrepresented that a sale of NISC was not in the works. However, express terms in the Settlement contradict these allegations. The Settlement specifically states that "NISC is considering and pursuing a range of strategic alternatives, including a sale of the company." The Court finds it impossible for Murayama Trust to claim an omission or misrepresentation about the sale of NISC when the Settlement contains such a term.

Accordingly, the Court finds that Murayama Trust failed to properly plead fraudulent inducement in Count I. Given Murayama Trust failed to properly plead fraudulent inducement, this Court can now consider whether the global release set therein entitles Defendants to a demurrer as to the remaining claims.

In each of the remaining claims, Counts II-V, Murayama Trust alleges misconduct that occurred prior to or contemporaneous with their ownership of NISC stock. The Settlement, however, clearly establishes that Murayama Trust released all claims against Defendants related to their ownership of NISC stock. Thus, the Settlement release covers Murayama Trust's remaining claims because they originate from Murayama Trust's ownership of NISC stock. Furthermore, as noted above, this Court can consider the Settlement and release valid on demurrer because Murayama Trust failed

44

to plead fraudulent inducement and the Settlement is properly attached. *See Wards*, 254 Va. at 382, 493 S.E.2d at 518. Because the Settlement release is properly before this Court and clearly covers Murayama Trust's remaining claims, the Court finds Murayama Trust cannot state a valid cause of action under the remaining claims, Counts II-V, as a matter of law.

## Conclusion

For the reasons stated above, Defendants' Demurrer is sustained as to all counts. Murayama Trust may amend their Complaint within twenty-one days of the Court's order.

## February 14, 2011

This matter comes to the Court on Defendants' demurrer. Upon consideration of the pleadings, arguments of counsel, and the applicable governing authorities, the Court sustains Defendants' demurrer.

## Background

On June 16, 2010, Plaintiff Jared and Donna Murayama 1997 Trust filed suit in this Court against Defendants NISC Holdings, L.L.C., chairman of NISC Thomas Campbell, DC Capital Partners, L.L.C., and International Business Machines Corporation. On November 3, 2010, Murayama Trust filed its Second Amended Complaint against Defendants, alleging fraud in the inducement (Count I), negligent misrepresentation (Count II); breach of fiduciary duty and duty of good faith and fair dealing (Count III), abuse of process (Count IV), and unjust enrichment (Count V). The Second Amended Complaint and attachments thereto set forth the following facts.

In 2007, Murayama Trust was the majority owner of Omen, Inc., an information technology management company based in Maryland. In June 2007, Murayama Trust sold Omen, Inc., to NISC. As consideration for this sale, Murayama Trust received 48.78 percent of the Class A voting stock in NISC, a cash sum of $1,425,000 payable in November 2008, a significant portion of Class B shares in NISC, and a seat on NISC's board of directors.

In July 2007, Murayama Trust appointed Mr. Murayama to NISC's board of directors. This position entitled Mr. Murayama to inspect NISC's books and records and notice of all board meetings.

On November 9, 2009, NISC initiated a lawsuit against the organization Hawaii 5-0. Mr. Murayama was acting as an advisor to Hawaii 5-0 when NISC filed suit. NISC did not include Mr. Murayama or the Murayama Trust in the suit; however, the complaint made numerous allegations of misconduct directly against Mr. Murayama. Specifically, the

complaint alleged that Mr. Murayama joined Hawaii 5-0 and thereafter launched a new business to compete directly with NISC.

Within three days of filing the Hawaii 5-0 lawsuit, NISC delivered a copy of the Hawaii 5-0 complaint and a settlement agreement to Mr. Murayama. NISC threatened to join Mr. Murayama if he did not agree to their settlement offer, which demanded that Mr. Murayama and the Trust return its Class A shares of NISC without compensation.

Mr. Murayama retained counsel and began negotiating a settlement. Murayama Trust alleges that, during these negotiations, Defendants failed to inform Mr. Murayama that NISC was actively negotiating a sale of the company and that NISC had been valued in excess of $400,000,000. Moreover, Murayama Trust alleges that Defendants misrepresented the value of the Trust's shares. According to Murayama Trust, Defendants asserted that the Trust's shares were worth $1,000,000 when in fact they knew the value was closer to $9,000,000.

Finally, Murayama Trust claims that Defendants intentionally withheld this information despite their disclosure obligation to Mr. Murayama as a member of the board. According to Murayama Trust, Mr. Campbell scheduled a board meeting to discuss the possible sale of NISC in November 2009. At this meeting, Mr. Campbell informed the board that a sale of NISC was imminent, that NISC had retained the investment banking firm Jefferies & Company, and that NISC had received purchase offers in excess of $300,000,000. Mr. Campbell did not notify Mr. Murayama of this meeting, and Murayama Trust alleges that Mr. Campbell and NISC purposefully concealed this meeting and its contents from Mr. Murayama.

On December 9, 2009, Mr. Murayama and the Murayama Trust executed a settlement agreement ("Settlement") with NISC. This Court can consider the Settlement on demurrer because Defendants properly admitted it through a motion craving oyer granted on July 27, 2010. The Settlement required Murayama Trust to return its Class A stock to NISC for $2,000,000 and Mr. Murayama to resign from NISC's board in return for NISC releasing any claims against Mr. Murayama for his alleged misconduct in the Hawaii 5-0 lawsuit. The Settlement also contains the following provision: "NISC is considering and pursuing a range of strategic alternatives, including a sale of the company or a qualified public offering that could ultimately result in a different valuation" of the Class A shares. Also included within the Settlement is a "no reliance" clause, whereby Murayama Trust promises it is not relying on any representations outside of the Settlement and that Murayama Trust has "fully informed itself" regarding the Settlement terms. Furthermore, the Settlement contains the following release language:

> Murayama Trust . . . hereby irrevocably and unconditionally release, acquit, and forever discharge NISC, Omen, and their affiliates . . . from any and all claims, rights, demands, actions,

> liabilities, obligations, causes of action of any and all kinds . .
> . known or unknown, arising at anytime before the execution
> date of this Agreement . . . including, but not limited to, any
> and all claims which [Murayama Trust] . . . may now have or
> may have had, arising in any way whatsoever connected with
> . . . ownership of a Class A Membership Interest in NISC . .
> . and that the Parties specifically agree that this Agreement
> extends to claims which [Murayama Trust] . . . do not know or
> expect to exist in their favor. . . .

Mr. Murayama and the Murayama Trust did not object to any of the language or terms outlined above. Instead, Mr. Murayama and the Murayama Trust executed the Settlement in exchange for $2,000,000.

A little more than a month later, IBM and NISC issued a press release announcing IBM's acquisition of NISC for approximately $367,000,000. Based on this price, the shares NISC purchased from Murayama Trust through the Settlement were re-sold for nearly $7,000,000 more than the settlement price.

Based on these facts, Murayama Trust filed the Second Amended Complaint detailed above.

On November 19, 2010, Defendants NISC, Mr. Campbell, and DC Capital Partners filed the Demurrer at issue, which argues that the Second Amended Complaint fails to state a claim because Mr. Murayama entered into a global release of all known and unknown claims in the December 9, 2009, Settlement. According to Defendants, when a party voluntarily enters into a global release of all known and unknown claims, he cannot later complain that he was "fraudulently induced because material information was, in fact, not disclosed" during negotiations. Moreover, Defendants argue that Murayama Trust is precluded from claiming fraudulent inducement because there could be no reasonable reliance in this case.

Murayama Trust filed a reply arguing that the Demurrer should be overruled because a contract or release induced by fraud is unenforceable notwithstanding any provision of the contract purporting to bar all future claims between the parties. Murayama Trust further argues that its claim for fraudulent inducement is valid because Defendants had a duty to disclose the omitted information and Mr. Murayama had a right to rely on the Defendants' silence. Lastly, Murayama Trust contends that, because it plans to rely on parol evidence to prove fraudulent inducement, the claim for fraudulent inducement is immune from demurrer.

*Analysis*

A. *Demurrer Standard*

A demurrer tests the legal sufficiency of a pleading and should be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action. Va. Code Ann. § 8.01-273; *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 914 (2001). A demurrer presents only a question of law to be decided by the court. *Tazewell County Sch. Bd. v. Snead*, 198 Va. 100, 103, 92 S.E.2d 497, 500 (1956).

In ruling on a demurrer, the court must admit as true all of the material facts properly alleged, as well as those that may be fairly and justly inferred from those facts. *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). When a demurrant's motion craving oyer has been granted, the court in ruling on a demurrer may consider the facts alleged as amplified by any written attachment added to the record on the motion. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 398, 337 S.E.2d 744, 746 (1985). Moreover, a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of an authentic, unambiguous document admitted through craving oyer. *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

## B. *Defendants' Demurrer*

Defendants argue that Murayama Trust cannot state a valid cause of action in the Second Amended Complaint because Mr. Murayama released all claims against Defendants in the December 9, 2009, Settlement. In response, Murayama Trust argues that Count I of the Second Amended Complaint properly alleges NISC fraudulently induced the December 9, 2009, Settlement, and thus the Settlement, and release language contained therein, must be considered void by this Court on demurrer.

It is a well settled principle of Virginia law that a fraudulently induced contract, compromise, or settlement is voidable. *See George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 220 Va. 109, 112, 255 S.E.2d 682, 683 (1979); *Nationwide Mut. Ins. Co. v. Martin*, 210 Va. 354, 357-58, 171 S.E.2d 239, 242 (1969). Furthermore, when fraudulent inducement is properly pleaded, the Court must accept as true that the disputed contract or settlement is void on demurrer. *See George Robberecht Seafood, Inc.*, 220 Va. at 111-12, 255 S.E.2d at 683; *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 564, 95 S.E.2d 207, 212 (1956); *VMC Satellite, Inc. v. Stevens & Assocs.*, 68 Va. Cir. 103, 107 (2005). Accordingly, if Murayama Trust properly pleaded that Defendants fraudulently induced the Settlement, the Court must accept that the Settlement and release language is void. Thus, before considering whether the release language entitles Defendants to a demurrer, the Court must determine whether Murayama Trust stated a valid claim for fraud in the inducement in Count I.

## Count I: Fraud in the Inducement

Actionable fraud requires a defendant's intentional, knowing misrepresentation of a material fact upon which a plaintiff has relied to its detriment. *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984). Virginia also recognizes fraud by omission, sometimes called "concealment." Concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984). Silence, however, does not constitute concealment in the absence of a duty to disclose. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999); *see Norris v. Mitchell*, 255 Va. 235, 240-41, 495 S.E.2d 809, 812-13 (1998) (claim for fraud by concealment rejected, in part, because of holding that defendants had no duty to disclose).

Defendants claim that Murayama Trust cannot allege fraud by omission because they voluntarily negotiated and executed the Settlement which contains the release language. According to Defendants, a party that voluntarily enters into a global release of all known and unknown claims cannot later complain that he was fraudulently induced because material information was not disclosed.

This argument sweeps too broadly. Virginia law is clear that, while lawsuits may be settled, a mutual release memorializing a compromise and settlement can be rescinded for fraud in its procurement. *See Metrocall of Del. v. Continental Cellular*, 246 Va. 365, 374, 437 S.E.2d 189, 193-94 (1993); *Nationwide Mut. Ins. Co.*, 210 Va. at 357-58, 171 S.E.2d at 242; *Packard Norfolk, Inc.*, 198 Va. at 564, 95 S.E.2d at 212. This is true even if the settlement and release was fraudulently procured through the omission of material facts.

The only noted exception to this rule is highlighted in *Metrocall of Delaware v. Continental Cellular*, where the Virginia Supreme Court held that a plaintiff attempting to settle an existing controversy over fraud, dishonesty, and self-dealing cannot later claim fraud in the procurement of the settlement through concealment by the defendant. 246 Va. at 374, 437 S.E.2d at 193-94. In other words, *Metrocall* found that a litigant cannot rely on the representation or omissions of the allegedly dishonest party when negotiating a settlement and release.

The exception highlighted in *Metrocall* does not apply in this case because the Settlement did not resolve claims of fraud or dishonesty against Defendants. In fact, there were no allegations of fraud or dishonesty made by Murayama Trust in the Hawaii 5-0 lawsuit. Accordingly, Murayama Trust is not foreclosed from pleading fraud through omission merely because they voluntarily executed the Settlement and release.

Crucially, however, although Murayama Trust's acquiescence to the Settlement does not bar a claim for fraud, Murayama Trust was still required to adequately plead each element. In all cases of fraud, the plaintiff must prove, among other things, that he acted in actual and justifiable reliance on the defendant's misrepresentation. *American Sur. Co. v. Hannah*, 143 Va. 291, 301, 130 S.E. 411, 414 (1925). Moreover, the reliance alleged must be objectively reasonable. *Mizell v. Sara Lee Corp.*, 2:05cv129, 2005 U.S. Dist. LEXIS 36988, at *17 (E.D. Va. June 9, 2005).

In this case, Murayama Trust has alleged that, during the settlement negotiations, Defendants affirmatively misrepresented the value of Murayama Trust's shares. Murayama Trust also claims Defendants omitted material facts that they should have disclosed, such as the status of any sale of NISC and the value of NISC's shares.

Assuming all the allegations made are true, the Court finds that Murayama Trust's decision to rely on Defendants' misrepresentations and silence was not reasonable. First, the parties' relationship had clearly developed into an adversarial one at the time of the settlement negotiations. Indeed, Defendants specifically alleged in the Hawaii 5-0 complaint that Mr. Murayama deceitfully conspired against NISC to steal their business, and they had threatened to joint Mr. Murayama in the suit. Moreover, Murayama Trust had retained counsel and made demands of its own. Given the adversarial nature of the negotiations, Murayama Trust should have known that NISC would not be eager to volunteer information throughout the negotiations. Second, the Settlement contains an explicit no reliance clause.

Although fraud in the inducement makes a contract voidable, it does not make the contract terms irrelevant. Fraud in the inducement is a tort-based remedy; it is not grounded in contract law. The provisions of a fraudulently induced contract can still affect the tort concept of whether a contracting party's reliance was reasonable. *See Bank of Montreal*, 193 F.3d at 829. Accordingly, this Court may consider the Settlement, and particularly the no reliance language, in determining whether Murayama Trust's reliance was reasonable. However, the Court is well aware that under Virginia law a contractual disclaimer of reliance is itself not a prophylactic against a claim of fraud. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 630 (4th Cir. 1999); *see George Robberecht Seafood, Inc.*, 220 Va. at 111-12, 225 S.E.2d at 683.

This clause clearly states that Murayama Trust had fully informed itself through counsel and advisors and that they would not rely on any statements made by Defendants. Moreover, Murayama Trust agreed to this no reliance term with the advice and consent of counsel. Finally, the Settlement provides that NISC was considering a range of options, including a stock sale, that could ultimately lead to a different valuation of Murayama Trust's shares. Consideration of these facts inescapably leads to

the conclusion that Murayama Trust was not justified in its reliance and had every reason to question the Defendants silence and statements regarding any sale of NISC and the value of Murayama Trust's shares.

Moreover, if a party claiming fraud was given information that would arouse the suspicions of an ordinary person, he is under a duty to investigate and cannot reasonably rely on the representations or silence of the other party. *Unity Farm Constr., Inc. v. Slabtown, L.P.*, 24 Va. Cir. 242, 245-46 (1991). This is not the same thing as negligence in failing to learn the truth, which is no defense to fraud. *See, e.g., Boykin v. Hermitage Realty*, 234 Va. 26, 360 S.E.2d 177 (1987). In essence, a contracting party must exercise ordinary care and prudence, and where a prudent person would have investigated, so too should all others. *Elliott v. Great Point Partners, L.L.C.*, 1:10cv1019, 2011 U.S. Dist. LEXIS 827, at *14-16 (E.D. Va. Jan. 5, 2011); *See Virginia Natural Gas Co, Inc. v. Hamilton*, 249 Va. 449, 456, 457 S.E.2d 17, 21 (1995) (the requirement of reasonable reliance requires that a contracting party exercise ordinary care and prudence).

Here, Murayama Trust was given information that would arouse the suspicions of an ordinary person. First, the Settlement contains a provision that the value of Murayama Trust's shares could change in the future due to a sale of NISC. In fact, the Settlement specifically states that "NISC is considering and pursuing a range of strategic alternatives, including a sale of the company . . . that could ultimately result in a different valuation" of the Class A shares. The Settlement also contains a provision whereby Murayama Trust promised not to rely on any representations made by Defendants. Considering these provisions and that Defendants had just initiated a lawsuit alleging Mr. Murayama conspired to injure NISC, Murayama Trust should have investigated the value of its shares as opposed to relying on the representations and silence of Defendants. Furthermore, Mr. Murayama had an avenue to access information regarding NISC as a member of the board. Murayama Trust, however, saw fit to trust itself in the hands of the Defendants instead of demanding information and investigating as a reasonable person would have. Thus, the Court finds that Murayama Trust's decision to rely on Defendants' silence and misrepresentations without any investigation was unreasonable.

Accordingly, it is the Court's opinion that Murayama Trust is unable, as a matter of law, to show that it reasonably relied upon Defendants' alleged misrepresentations or silence. Thus, Murayama Trust is incapable of pleading fraudulent inducement in Count I and this claim must be dismissed.

Murayama Trust has one additional argument that the Court must address before moving to the remaining counts. Murayama Trust contends that a claim for fraud in the inducement is not demurrable when a party intends to rely on parol evidence. Thus, because Murayama Trust intends to

rely on parol evidence to prove fraud in this case, Count I is immune from demurrer.

This argument is unpersuasive. The cases cited by Murayama Trust indicate that relying on parol evidence itself is not a basis for demurrer, not that relying on parol evidence immunizes a claim from demurrer. *See George Robberecht Seafood, Inc.*, 220 Va. at 111-12, 225 S.E.2d at 683 ("*the fact* that such a pleading shows that a party intends to rely upon such evidence would not render the [pleading] demurrable") (emphasis added). Moreover, Murayama Trust's argument is inconsistent with Virginia's policy favoring the finality of settlements. *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995); *see Richardson v. Richardson*, 10 Va. App. 391, 399, 392 S.E.2d 688, 692 (1990) (noting that settlement agreements are designed to put an end to litigation and are favored by the law), overruled in part on other grounds, *Flanary v. Milton*, 263 Va. 20, 556 S.E.2d 767 (2002). Indeed, Murayama Trust's argument, when taken to its logical end, would eviscerate the finality of settlement agreements because a party to a settlement who felt they received an inferior result could always pursue litigation and avoid a demurrer by alleging fraud in the inducement through parol evidence. This threat of litigation would enable a plaintiff to refuse compliance with their settlement and demand additional compensation, which the defendant would pay knowing they could not avoid litigation costs and attain a dismissal on demurrer. Accordingly, courts in this jurisdiction are not precluded from upholding settlement agreements merely because the plaintiff asserts that he intends to rely on parol evidence to demonstrate fraud in the inducement. Any litigant claiming fraud in the inducement must adequately plead each element, and, if they cannot do so, as in this case, the Court should dismiss the claim and give finality to the settlement.

Given Count I must be dismissed because Murayama Trust is incapable of pleading fraudulent inducement, the Court can now consider whether the release language set forth in the Settlement entitles Defendants to a demurrer as to the remaining counts.

### Counts II-V

Virginia law is clear that parties can freely contract for the release of all claims, both known and unknown. *See, e.g., Richfood, Inc. v. Jennings*, 255 Va. 588, 591, 499 S.E.2d 272, 274-75 (1998); *Metrocall*, 246 Va. at 376, 437 S.E.2d at 195. A valid release completely bars litigation of the waived claims. *See id.*

In this case, the December 9, 2009, Settlement contains a release provision waiving all claims known and unknown against Defendants

arising from "or in any way . . . connected" to Murayama Trust's ownership of NISC stock. Based on the record, it is undisputable that the Settlement constitutes a valid release. *See Pennsylvania Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1194 (E.D. Va. 1987) (to show the initial validity of a release, a party must show that there was some dispute between the parties, that the release was signed and executed settling the dispute, and that consideration was given in return for the release). Accordingly, Murayama Trust is barred from litigating all claims arising from or connected to its ownership of NISC stock.

In each of the remaining Counts, II-V, Murayama Trust alleges misconduct that is derivative of or attributable to its ownership of NISC stock. The Settlement release indisputably covers these remaining claims. Therefore, Murayama Trust is barred from litigating these Counts.

Furthermore, Murayama Trust has failed to advance a valid defense to set aside the Settlement release. *See Nationwide Mut. Ins. Co. v. Muncy*, 217 Va. 916, 919, 234 S.E.2d 70, 72 (1977) (a valid release can be set aside due to fraud or mistake, but the burden is on the releasor to show that a valid release should be set aside). Although Murayama Trust argues that the Settlement is void due to fraud in the inducement, this Court has already determined that Murayama Trust is precluded from pleading fraudulent inducement in this case.

Accordingly, the Court finds that Counts II-V are barred as a matter of law because the Settlement release clearly covers these remaining claims and Murayama Trust did not provide a valid defense to set aside the Settlement.

## Conclusion

For the reasons set forth above, Defendants' Demurrer is sustained with prejudice as to all counts.