Metrocall of Delaware, Inc., et al.

v.

Continental Cellular Corporation, et al.

Record No. 921810

BEB Associates, et al.

v.

Continental Cellular Corporation, et al.

Record No. 921811

November 5, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell and Keenan, JJ.

*Gregory A. Giordano (Thomas B. Shuttleworth; Shuttleworth, Ruloff, Giordano & Kahle,* on brief), for appellants. (Record No. 921810)

*Lewis T. Stoneburner (Thomas J. Schilling; Williamson & Stoneburner,* on brief), for appellees. (Record No. 921810)

*Jon D. Becker (Neal C. Schulwolf,* on briefs), for appellants. (Record No. 921811)

*Lewis T. Stoneburner (Thomas J. Schilling; Williamson & Stoneburner,* on brief), for appellees. (Record No. 921811)

JUSTICE COMPTON delivered the opinion of the Court.

In these appeals, we consider whether the trial court correctly decided that the present causes of action are barred by the prior settlement of litigation between these same parties or their privies.

This intrapartnership controversy stems from the establishment and operation of a cellular radio telecommunications system for mobile telephone, portable telephone and dispatch communication services in the Norfolk-Virginia Beach-Portsmouth area. Initially, the dispute arose over the manner in which Norfolk Cellular Telephone Company (Norfolk Cellular), a Virginia general partnership, was being managed. In 1986, two lawsuits were filed in the court below, the prior litigation, by parties holding a minority interest in Norfolk Cellular complaining that a majority entity, which was the managing general partner, was guilty of a number of improper and fraudulent acts. These suits were settled in 1987, the parties executing a 15-page general release, and were dismissed agreed, with prejudice.

As part of the settlement, the minority partners agreed to assign their interests to the majority group for an agreed sum per unit. After the sale was consummated, the purchasers sold their interests to a third party for a unit price greater than the price paid to the minority group.

Subsequently, the minority group mounted the present litigation against the majority claiming that, during the settlement negotiations in the prior litigation, the defendants were simultaneously and covertly conducting negotiations to sell the entire partnership to the third party for the higher price. The plaintiffs allege that this failure to disclose was fraudulent and was done for the purpose of inducing the plaintiffs to enter into the settlement agreement to their detriment.

The present litigation is comprised of a 1990 suit in equity and a 1991 action at law, consolidated for trial and on appeal. The equity suit was instituted by appellant Metrocall of Delaware, Inc., and Metrocall of Nevada General Partnership II against Continental Cellular Corporation (Continental Cellular), Continental Cablevision, Inc., and Continental Cablevision of Western New England, Inc. In an amended bill of complaint, the plaintiffs set forth the relationship among the parties. No worthwhile purpose will be served by reciting the minutiae of the parties' corporate and partnership interconnections. For purposes of this opinion, it is sufficient to state that all plaintiffs and defendants were partners in Norfolk Cellular pursuant to a 1984 partnership agreement and that defendant Continental Cellular was the managing partner of Norfolk Cellular pursuant to a 1985 management agreement.

In the amended bill, the plaintiffs assert that Continental Cellular was to act as general manager for Norfolk Cellular and was to provide management services in good faith and in the best interests of Norfolk Cellular. Noting that their predecessors in interest owned 16.67% of Norfolk Cellular while Continental Cellular owned 66.67%, plaintiffs allege that during 1986 "various disputes developed between the partners of Norfolk Cellular, concerning, among other things, the capital calls, business and operation of the partnership and the Partnership Agreement." The dispute resulted in the filing of two lawsuits in 1986, one by the plaintiffs' predecessors and the second by others holding minority interests in Norfolk Cellular.

In the amended bill, the plaintiffs further allege that the prior litigation was compromised and settled, memorialized in a January 1987 settlement agreement. Under the agreement, the plaintiffs' predecessors agreed to assign their general partnership interests to Continental Cellular for a price of approximately $22.00 per unit. The plaintiffs further allege that, during the settlement negotiations, the defendants represented that they would not sell their interests to the plaintiffs' predecessors or to any third party. In fact, the plaintiffs allege, the defendants were simultaneously negotiating with a third party to sell the entire partnership.

Continuing, the plaintiffs allege that "from November 1986 through at least the summer of 1987" the third-party negotiations took place, culminating in an agreement to sell the partnership, including the interests acquired by Continental Cellular from the plaintiffs' predecessors, for a price in excess of $50.00 per unit.

Additionally, the plaintiffs allege that, during the December 1986 settlement negotiations in the prior litigation, Continental Cellular "intentionally failed to disclose to their partners" the fact of the third-party negotiations "and the potential profits which Norfolk Cellular partners could reap from a conveyance of the Norfolk Cellular partnership assets" to the third party. The plaintiffs assert that this fact was material and intentionally withheld and that the defendants knew, or should have known, the plaintiffs' predecessors would not have entered into the settlement agreement had they been aware of the ongoing relationship and negotiations with the third party. The plaintiffs further allege reliance on the misrepresentations and damage resulting from the "actionable misrepresentations and omissions of material information."

Count I of the amended bill asks for rescission of the settlement agreement and a return to the plaintiffs of their respective shares in the partnership. Count II alleges a breach of fiduciary duty on behalf of the defendants with respect to their failure to disclose the third-party negotiations and asks for an accounting of all profits derived from the conveyance to the third party.

Count III alleges a breach of the management agreement resulting from Continental Cellular's failure "to disclose the material fact" of the third-party negotiations. Count IV asks that a constructive trust be imposed on the profits from the conveyance of Norfolk Cellular's assets to the third party.

Count V alleges that Continental Cellular "willfully, intentionally and fraudulently misled" the plaintiffs' predecessors for the purpose of inducing them to enter into the settlement and agreement, and plaintiffs seek compensatory damages in excess of $4 million and punitive damages of $350,000.00.

The law action in the present litigation was instituted by BEB Associates, partners and successors in interest to Bay Cellular Investors, Ltd., and Chesapeake Cellular Systems. These entities held interests in Norfolk Cellular totalling 16.66%. The plaintiffs, naming Continental Cellular and others as defendants, make essentially the same allegations in the motion for judgment as the plaintiffs in the companion suit make in the amended bill.

Specifically, the plaintiffs charge Continental Cellular, and its "affiliate," Continental Cellular of Virginia, Inc., with "concealment" of the third-party negotiations that amounted to "a fraudulent omission by defendants of a material fact." Such omission, the plaintiffs allege, "was a principal inducement to plaintiffs to sell

their interest in Norfolk Cellular to the defendants.'' The conceal-ment and failure to disclose, the plaintiffs allege, ''constituted an intentional and willful breach of'' Continental Cellular's ''fiduciary duty to plaintiffs as a General Partner in Norfolk Cellular.'' Assert-ing that they were induced to sell their interest at a price below the actual value and that they were fraudulently induced to compromise the prior litigation, the plaintiffs seek recovery of $10 million in compensatory damages and a like amount in punitive damages.

Responding in the present litigation, the defendants filed special pleas of res judicata, collateral estoppel, and release. They asserted that the ''Settlement and General Release'' dated January 8, 1987 and the dismissed agreed order dated February 2, 1987 in the prior litigation barred the prosecution of the present litigation. In addi-tion, the defendants filed a counterclaim in the law action. They allege payment in excess of $3.2 million to the plaintiffs as a part of the settlement of the prior litigation and seek the return of those funds if ''the Settlement and General Release is rescinded.''

Subsequently, the trial court considered the court records of the prior litigation and argument of counsel. On September 3, 1992, the court entered final orders in each case, sustaining the special pleas on the grounds that the present litigation is barred by the doctrine of res judicata, that the plaintiffs are collaterally estopped from bring-ing the claims, and that the actions are barred by the 1987 written release. We awarded the plaintiffs appeals from these orders.

On appeal, the plaintiffs contend that the trial court erred in each of its rulings. These contentions, of course, necessitate a review and analysis of the prior litigation and the Settlement and General Release as well as the dismissed agreed order.

The prior litigation was comprised of two declaratory judgment actions at law both filed on the same day in September 1986, which were later transferred to the chancery side of the court below and consolidated for trial. The first suit was filed by the Metrocall enti-ties against Continental Cellular.

In the motion for declaratory judgment, the plaintiffs set forth the relationship among the parties, the execution of the 1984 partner-ship agreement, and the details of the 1985 management agreement. The plaintiffs alleged that the managing partner of Norfolk Cellular ''was to provide certain management services in good faith and in the best interests of'' Norfolk Cellular. The plaintiffs alleged that at ''all times material to this case,'' Continental Cellular ''willfully and without authority operated NORFOLK CELLULAR for its own

pecuniary benefit, in violation of the Management Agreement, without regard to the rights and liabilities of the Plaintiffs, and to the detriment of the Plaintiffs.''

Specifically, the plaintiffs complained that defendant made unauthorized equipment purchases, disregarded budgetary requirements, interfered with approved vendor arrangements, and issued to plaintiffs an unscheduled capital call of $1.4 million to cover the costs of unauthorized expenditures. The plaintiffs sought rescission of the management agreement, alleging that Continental Cellular was guilty of ''wrongful acts, misrepresentations, fraud and/or breaches of fiduciary duties.''

Additionally, the plaintiffs sought damages in the sum of $2.5 million for breach of the partnership and management agreements, alleging that Continental Cellular ''has wrongfully acquired and failed to disclose to plaintiffs business opportunities and interests which may and/or will adversely affect plaintiffs' interests in NORFOLK CELLULAR, and without limitation, has otherwise breached its fiduciary duties to the other general partners'' of Norfolk Cellular. Also, the plaintiffs alleged that Continental Cellular purchased and developed a cellular phone system in the Newport News/Hampton area, thus creating a continuing breach of its fiduciary and contractual obligations and constituting ''a usurpation of a partnership opportunity.'' Based on this and other conduct of Continental Cellular, the plaintiffs alleged that they relied to their detriment on Continental Cellular's ''management abilities and/or did not learn of the aforesaid self dealing or acquisition of the business opportunity or interest aforementioned until after the injury caused thereby occurred.''

Further, the plaintiffs alleged that the ''aforesaid wrongful conduct and/or self-dealing'' by Continental Cellular ''did, in all regards, involve material facts which were not disclosed when duty required disclosure and/or were misrepresentations of authority made by'' Continental Cellular to third parties which it ''knew or should have known at the time of their making were fraudulent and/or exceeded its authority.'' Plaintiffs further alleged that Continental Cellular ''has engaged in a fraudulent course of conduct, resulting in unnecessary, unauthorized and premature capital calls in an effort to force the minority investors out of the partnership, as more fully evidenced by its recent offer to purchase the Plaintiffs' interests for a sum well below the market value.''

The plaintiffs also asked that Norfolk Cellular be dissolved and for an accounting, or alternatively that an independent manager be appointed and that a receiver be appointed to oversee the activities of Norfolk Cellular.

The second suit in the prior litigation was a petition for declaratory judgment brought by the predecessors in interest to the plaintiffs in the law action in the present litigation. Naming Continental Cellular as a defendant, the plaintiffs made essentially the same allegations as the plaintiffs in the companion suit in the prior litigation.

Specifically, the plaintiffs charged Continental Cellular with engaging in mismanagement, requiring unauthorized capital calls because of improper capital expenditures, and breaching fiduciary duties. The plaintiffs sought recovery of compensatory and punitive damages, rescission of the management contract, dissolution of Norfolk Cellular, an accounting, and indemnification by Continental Cellular against all debts of the partnership.

The plaintiffs alleged that Continental Cellular "has engaged in improper self-dealing; has wrongly acquired and failed to disclose to plaintiffs business opportunities and interests which may and/or will adversely affect the plaintiffs' interests in NORFOLK CELLULAR, and without limitation, has otherwise breached its fiduciary duties to the other general partners of" Norfolk Cellular. Further, plaintiffs alleged that to their detriment they justifiably relied on Continental Cellular's management abilities "and/or did not learn of the aforesaid self dealing or acquisition of the Peninsula business opportunity or interest aforementioned until after the injury occurred."

Responding in the prior litigation, the defendants filed answers generally denying the plaintiffs' allegations. The defendants sought affirmative relief by "counterclaims" based on plaintiffs' alleged failure to make timely capital call payments when due. Among other things, the defendants sought declarations that the plaintiffs' interests in the partnership were that of a "Defaulting Partner" under the partnership agreement.

According to the plaintiffs' allegations in the present litigation, settlement negotiations in the prior litigation occurred in December 1986, two months after the suits were filed. These negotiations culminated in the January 8, 1987 Settlement and General Release.

The release incorporated as exhibits "mailgrams" of December 31, 1986 and January 1, 1987 confirming the intent of the parties to

execute a "release of all claims regardless of nature or source." After providing for assignments of interests and transfer of funds among the parties, the release provided that the parties mutually "hereby waive, release and discharge" the others "for and from any and all past acts, actions, claims, causes of action, demands or liability of whatever nature or kind, whether known or unknown, including actual, consequential and punitive damages, on account of, relating to or arising, or which might or could arise, either directly or indirectly, from any matter or source whatsoever, all of which actions, claims, demands, causes of action or liability are hereby deemed merged into this Settlement and General Release." The "Final Dismissal Order" entered in the consolidated cases provided that "this matter be and it hereby is dismissed, as agreed, with prejudice."

The plaintiffs argue on appeal, as we have said, that the trial court erred in its rulings on res judicata, collateral estoppel, and release. Because of the view we take of the appeals, however, we shall address only the release issue.

The plaintiffs contend that the fiduciary duty of a partner, especially a managing general partner, extends through the termination of the partnership, even though there are strained relations among the parties before the partnership is dissolved. Thus, according to the plaintiffs, the defendants owed them a fiduciary duty during the negotiations of the sale of their partnership interest, even though defendants were plaintiffs' adversaries in litigation.

The question then becomes, according to the plaintiffs, whether the actions of the defendants, as pled, would be grounds for rescinding the release. They say that the "fraud of which the plaintiffs complain, is concealment as well as misrepresentation." They contend defendants "misrepresented that they would not sell their interest in the partnership to the plaintiffs or any third party" and "concealed the fact that they were negotiating for the sale of the entire partnership at the same time they were negotiating to purchase the plaintiffs' interest in the partnership." They assert that this amounts to fraud in the inducement and a basis to set the release aside. We do not agree that the plaintiffs are entitled to a rescission of the release.

Of course, a written, mutual release memorializing a compromise and settlement may be rescinded for fraud in its procurement. *Nationwide Mut. Ins. Co.* v. *Martin*, 210 Va. 354, 357-58, 171

S.E.2d 239, 242 (1969). And, the wrong of fraud requires an intentional, knowing misrepresentation by a defendant of a material fact upon which a plaintiff has relied to its detriment. *Winn* v. *Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984). Concealment of a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, is as much fraud as if existence of the fact were expressly denied. *Clay* v. *Butler*, 132 Va. 464, 474, 112 S.E. 697, 700 (1922). But to establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation. *American Sur. Co.* v. *Hannah*, 143 Va. 291, 301, 130 S.E. 411, 414 (1925); some courts label this requirement "justifiable reliance." *Pettinelli* v. *Danzig*, 722 F.2d 706, 709 (11th Cir. 1984).

■ In the present litigation, the record affirmatively shows as a matter of law that the plaintiffs had no right reasonably to rely upon any misrepresentations or concealment of facts by the defendants in connection with the settlement and execution of the release; there was no justifiable reliance. The mutual release waived, released, and discharged, in the broadest terms, the respective parties "for and from any and all past acts, actions, claims, causes of action, demands or liability *of whatever nature or kind, whether known or unknown*, including actual, consequential and punitive damages, on account of, *relating to or arising, or which might or could arise, either directly or indirectly*, from any matter or source *whatsoever*, all of which actions, claims, demands, causes of action or liability are hereby deemed merged into this Settlement and General Release." (Emphasis added.) In view of the terms of the release, we must look again to the allegations in the prior litigation to determine the scope of the settlement.

In the prior litigation, the plaintiffs' predecessors in interest charged Continental Cellular with "willfully and without authority" operating Norfolk Cellular "for its own pecuniary benefit . . . to the detriment of the Plaintiffs"; with "wrongful acts, misrepresentations, fraud and/or breaches of fiduciary duties"; with wrongfully acquiring and failing "to disclose to plaintiffs business opportunities and interests which may/or will adversely affect plaintiffs' interests in" Norfolk Cellular and "without limitation" otherwise breaching fiduciary duties to other general partners; with "usurpation of a partnership opportunity"; with "self dealing" involving non-disclosure of material facts; and with efforts "to force the

minority investors out of the partnership'' by trying ''to purchase the Plaintiffs' interests for a sum well below market value.''

In the present litigation, the type of conduct attacked is the same; the sole ''new'' activity alleged is that defendants were simultaneously conducting negotiations to sell the entire partnership to the third party for a price higher than was being offered the plaintiffs. This failure to disclose, the plaintiffs say, was fraudulent and was done for the purpose of inducing the plaintiffs to enter into the settlement agreement.

In essence, the plaintiffs, urging rescission, argue that when the parties, albeit represented by counsel and involved in an adversarial relationship, sought to settle a claim of fraud based on improper self-dealing, they cannot be bound by that settlement agreement unless the alleged defrauder made full disclosure to the adverse parties, prior to settlement, of the detail of all its wrongful acts in connection with the subject matter of the prior litigation. This argument has no logical basis and is contrary to the rule followed in cases with similar facts. *See Bellefonte Re Ins. Co.* v. *Argonaut Ins. Co.*, 757 F.2d 523 (2nd Cir. 1985) (complaints that sought rescission of reinsurance contracts and settlement agreements on the ground of fraud in the inducement by means of fraudulent non-disclosures dismissed; held that release extended to claims of non-disclosure of material facts); *Pettinelli, supra* (fraudulent inducement in entering into release not established in stockholders' derivative suit against corporate officers and directors for breach of fiduciary duties because plaintiffs had no legal right to rely on representations made by allegedly dishonest parties); *Alleghany Corp.* v. *Kirby*, 333 F.2d 327 (2nd Cir. 1964), *aff'd on reh'g*, 340 F.2d 311 (1965), *cert. dismissed*, 384 U.S. 28 (1966) (corporation's suit to set aside prior settlement of stockholders' derivative action on ground that settlement obtained by fraudulent concealment of certain facts dismissed because the same fraudulent conduct gave rise to the prior suit).

Even fraud cases can be settled. When one party, under these circumstances, freely and for consideration, releases and promises not to sue for failure to disclose material facts and for misrepresentation, that party will not be heard to claim that the promise was fraudulently induced because material information was, in fact, not disclosed. In other words, when negotiating or attempting to compromise an existing controversy over fraud, dishonesty, and self-dealing, it is unreasonable to rely on the representations of the allegedly dishonest party. The ''past acts'' recited in the release,

which underlay the prior litigation, were precisely the same type of conduct that furnishes the basis of the present litigation. The only difference is that the present specific acts of self-dealing, although following the same pattern of activity, were not discovered until after the settlement had been consummated. The release, however, was intended to bar "all claims regardless of nature or source," according to the mailgrams, and to discharge all claims "of whatever nature or kind, whether known or unknown . . . from any matter or source whatsoever," according to the release.

■ In sum, because the plaintiffs had no legal right to reasonably rely upon the alleged misrepresentations in connection with the compromise and settlement, we hold that the trial court did not err in refusing to rescind the release for fraud in its inducement. Thus, the valid release bars the present litigation.

Before ending this opinion, we must address a matter of appellate procedure. Appellees Continental Cellular Corporation, Continental Cablevision, Inc., and Continental Cable Television of Western New England in Record No. 921810 and all appellees in Record No. 921811 have violated Rule 5:32(g) by including in the appendices items that are not germane to any assignments of error. These parties apparently made no effort to eliminate immaterial court papers and other documents from their appendix designations.

For example, these appellees inexplicably designated *every* page from the voluminous trial court file in a fifth case, not involved in these appeals, which was nonsuited during trial and which was a predecessor to one of the actions in the present litigation. Also, these appellees were responsible for the printing in the appendices of such irrelevant items as proofs of service of process, proceedings dealing with disqualification of counsel, correspondence relating to designations of trial judges to preside in the matters, notices of hearings, pages of miscellaneous correspondence, subpoenas duces tecum, balance sheets, lease and license agreements, and a multipage application with amendment for a permit to establish a cellular system, filed with the Federal Communications Commission.

■ In Record No. 921810, of the 1,353 pages in the five-volume appendix, the appellees named above designated at least *905* pages that are not germane to any issue in the appeal. Thus, those appellees shall bear the cost of producing 66 percent of that appendix.

In Record No. 921811, of the 2,216 pages in the six-volume appendix, the appellees designated at least *1,723* pages that are not

germane to any issue in the appeal. Thus, the appellees shall bear the cost of producing 77 percent of that appendix.

Accordingly, the judgments below dismissing the present litigation will be

*Affirmed.*