Present:  Kinser, C.J., Lemons, Millette, Mims, McClanahan, and
Powell, JJ., and Russell, S.J.

RICHARD ANTHONY, ET AL.

v.  Record No. 130681                    OPINION BY
                                    JUSTICE DONALD W. LEMONS
VERIZON VIRGINIA, INC.,                  June 5, 2014
ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James A. Cales, Jr., Judge[1]

In this appeal, we consider whether the Circuit Court of

the City of Portsmouth ("circuit court") erred by holding that

the plaintiffs' state law claims were completely preempted by §

301(a) of the Labor Management Relations Act of 1947 ("LMRA"),

29 U.S.C. § 185(a), and by granting the demurrers filed by

Verizon Virginia, Inc. ("Verizon") and the Communication Workers

of America, AFL-CIO District 2 (the "CWA").

I.  Allegations in the Complaint and Proceedings

Richard Anthony, Michael Giles, Jeremy Autry, George

Cummings, James Hodge, William Murden, Jeffrey Reynolds, Pharoah

Mosby, Christopher Lee, and Ricky Rosser (collectively,

"employees") are technicians formerly employed by Verizon.  Each

was a member of the CWA.

In May 2010, the employees allegedly received an Enhanced

Income Security Plan ("EISP") which stated that Verizon had a

_____
    [1] Judge Cales retired after issuing his letter opinion on
December 27, 2012.  Judge James C. Hawks entered the final
order.

surplus of 12,000 employees and potentially would conduct a layoff.  Originally, the employees were told their jobs were not in jeopardy given their seniority.  However, on June 15, 2010, the employees were told by the CWA and Verizon (collectively, "defendants") that their jobs were subject to termination in August 2010; and if they did not accept the EISP and voluntarily resign, they would not receive any enhanced severance benefits.[2] Given this information, each of the employees accepted the EISP and their employment with Verizon was terminated on July 3, 2010.

According to the complaints, the Virginia Employment Commission conducted a hearing shortly after the employees accepted the EISPs.  In the hearing, Verizon allegedly claimed there was not a surplus, the employees' jobs were never in jeopardy, and the employees voluntarily resigned.  Additionally, Verizon allegedly advertised a shortage of 200 technicians in

---

[2] The EISP offered each of the employees: (1) a $50,000 one-time cash bonus; (2) acceleration of pension band increase; (3) a guaranteed interest rate for pension lump sum conversion; (4) waiver of age-based pension reductions; and (5) increased cap on EISP payment.  The EISP stated: "This Offer provides lucrative financial incentives to eligible Associates who choose to voluntarily leave Verizon. . . .  The Company does not intend to offer these special enhancements again, so it is extremely important that you take the time to thoroughly review the enclosed materials and consider volunteering for this generous One-Time Offer. . . .  ACT NOW . . . if you decide to volunteer for this Offer, you must fax a signed copy of the enclosed form no later than June 16, 2010."

the employees' region shortly after representing to the employees that there was a surplus.

On October 7, 2011, Richard Anthony filed a complaint in the circuit court alleging actual and constructive fraud against Verizon and constructive fraud against the CWA:

> The defendants, CWA and Verizon, negligently misrepresented material facts with the intent that plaintiff would rely upon such representations.
>
> The plaintiff relied upon the aforementioned negligent misrepresentations made by the defendants to his detriment and sustained substantial damages.
>
> The defendant, Verizon, misrepresented material facts, knowingly and intentionally, with the intent to mislead plaintiff, and plaintiff relied upon such misrepresentations to his detriment causing him to sustain substantial financial losses and damages.

Anthony alleges that he and similarly situated employees were "misled . . . in order to obtain their signatures to the [Enhanced Income Security Plan], thereby removing those workers with more seniority, higher salaries and more fringe benefits from [the] payroll." Michael Giles, Jeremy Autry, and George Cummings filed virtually identical complaints on October 10, 2011. James Hodge, William Murden, Jeffrey Reynolds, Pharoah Mosby, and Christopher Lee filed similar complaints on October 13, 2011. Finally, on October 14, 2011, Ricky Rosser filed his

complaint alleging actual and constructive fraud and negligent infliction of emotional distress.

After the employees filed their complaints in circuit court, the defendants filed notices of removal to the United States District Court for the Eastern District of Virginia ("federal district court"), arguing that the employees' state-law claims were completely preempted by § 301 of the LMRA. The notices of removal stated that "[b]ecause each of these claims will require a reviewing court to interpret the parties' collective bargaining agreements, and because each is inextricably intertwined with the terms of those agreements, this action falls squarely within the ambit of Section 301 of the LMRA." The defendants also filed motions in the district court under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeking to dismiss each of the employees' claims. In response, the employees filed motions to remand to state court.

Based on these filings, the federal district court entered an order on July 2, 2012, denying the defendants' motions to dismiss and granting the employees' motions to remand. The federal district court held:

> Defendants argue that Plaintiff[s] must refer to the collective bargaining agreement in two ways: First, the collective bargaining agreement is relevant to determining whether Plaintiff[s] [were] really at risk of being terminated. Second, Plaintiff[s] will have to show that [their]

4

fear of termination was reasonable despite any protections that [they] had under the collective bargaining agreement.

Defendants' first argument is unpersuasive. Even if the collective bargaining agreement reinforces Plaintiffs' claim[s] that [they were] not actually at risk of termination, Plaintiff[s] do[] not rely on the agreement, but instead rel[y] on Verizon's hiring practices in late 2010 to show that [they] [were] in no danger of being fired, and that Defendants' representations to the contrary were false.

Defendants' second argument also fails. Plaintiff[s] do[] not contend that Defendants failed to warn [them] of something for which they were duty-bound to warn. Williams v. Nat'l Football League, 582 F.3d 863, 881 & n.14 (8th Cir. 2009). Nor do [they] assert that Defendants made false factual allegations that were tailored to satisfy the collective bargaining agreement. Augustin v. SecTek, Inc., 807 F.Supp.2d 519, 525 (E.D. Va. 2011).

Instead, Plaintiff[s] claim[] that [they] relied on an affirmative statement that Verizon intended to do something (terminate [them]), which was possibly prohibited by the collective bargaining agreement. Regardless of whether the collective bargaining agreement prohibited Verizon from firing Plaintiff[s], [their] reliance on statements, made by both [their] union and employer, that Verizon was likely to fire [them] in violation of the collective bargaining agreement was reasonable.

When the case was remanded to circuit court, Verizon and the CWA filed demurrers to each of the complaints, arguing the state-law claims were completely preempted by § 301 of the LMRA.

5

Although the federal district court had previously decided that the employees' state-law claims were not completely preempted and there was no federal jurisdiction, the circuit court considered the defendants' complete preemption argument. The circuit court consolidated these cases and, following a hearing, it issued a letter opinion on December 27, 2012 holding:

> Plaintiffs' claims do in fact require the interpretation of the collective bargaining agreement (CBA) between Verizon and the Union representatives. Specifically, the Plaintiff[s] allege[] that Verizon determined it had a "surplus" of employees which prompted the issuance of a severance package to the defendants. It was this surplus that then triggered the alleged misrepresentations to the Plaintiffs. The Complaint goes on to state that Verizon then went before the State Corporation Commission[3] and stated that they did not have a surplus in regards to the Plaintiffs' jobs. Were this case to continue these facts would be hotly litigated and the term surplus would supply the heat.
>
> Unfortunately, for the Plaintiffs such a surplus is provided for in the CBA. Such an event, in this context, carries with it duties and responsibilities for Verizon and the Union . . . . The acts that were undertaken by the Defendants will be at issue and those acts are governed by the CBA. Therefore, allegations such as are before this Court, would require this judicial body to inquire as to what actions were taken and why, which would cast our net of inquiry squarely over the CBA. This is

_____

[3] The circuit court's ruling incorrectly refers to the State Corporation Commission. The plaintiffs' pleadings actually alleged that Verizon appeared before the Virginia Employment Commission.

flatly forbidden under superseding federal law.

On March 26, 2013, following a rehearing, the circuit court granted the defendants' demurrers on the ground of complete preemption, and dismissed the cases with prejudice. The employees filed timely notices of appeal and we granted an appeal based on their single assignment of error:

> The circuit court erred in dismissing the Appellants['] Complaint on the basis that section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts the Appellants['] claims.

## II.     Analysis

### A. Standard of Review

Whether the employees' state law claims for actual and constructive fraud and negligent infliction of emotional distress are completely preempted by § 301 of the LMRA is a question of federal law reviewed de novo. See Maretta v. Hillman, 283 Va. 34, 40, 722 S.E.2d 32, 34 (2012). Whether a state claim is completely preempted by federal law is a question of congressional intent: "The purpose of Congress is the ultimate touchstone." Malone v. White Motor Corp., 435 U.S. 497, 504 (1978). "While the nature of the state tort is a matter of state law, the question whether the . . . tort is sufficiently independent of federal contract interpretation to avoid pre-emption is, of course, a question of federal

7

law."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213-14 (1985).

"At the demurrer stage, it is not the function of the trial court to decide the merits of the allegations set forth in a complaint, but only to determine whether the factual allegations pled and the reasonable inferences drawn therefrom are sufficient to state a cause of action."  Friends of the Rappahannock v. Caroline Cnty. Board of Supervisors, 286 Va. 38, 44, 743 S.E.2d 132, 135 (2013) (citing Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors of Charles County, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000)).  On appeal, we accept as true "all facts properly pled, as well as reasonable inferences from those facts."  Steward v. Holland Family Props., LLC, 284 Va. 282, 286, 726 S.E.2d 251, 253 (2012).

## B. Complete Preemption

In their demurrers before the circuit court, Verizon and the CWA argued the employees' claims were completely preempted:

> When a claim requires a court to interpret a collective bargaining agreement . . . in an industry affecting commerce, Section 301 completely preempts and wholly displaces the claim, even if it is pled under state tort law. . . . Each and every one of the Plaintiffs' claims are, therefore, completely preempted under Section 301, and must be either dismissed outright or construed as Section 301 claims.

8

Complete preemption is a doctrine which transmutes state law claims into federal claims and permits federal courts to exercise their removal jurisdiction, even if federal issues are not pleaded on the face of the complaint.  See, e.g., Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 403-07 (1988).  See also Whitman v. Raley's, Inc., 886 F.2d 1177, 1181 (9th Cir. 1989).  Complete preemption has been described as a narrow exception to the well-pleaded complaint rule.  Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987)("On occasion, the Court has concluded that the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.")(internal citation and quotation marks omitted).

The complete preemption doctrine was developed to permit federal courts to exercise their removal jurisdiction when state claims implicate uniquely federal policy concerns like collective-bargaining contracts between labor unions, employers, and employees.  When addressing claims of complete preemption, federal courts are required to decide whether the state law claims actually "arise under" federal law.  If the claims arise under federal law, federal courts may exercise their subject matter jurisdiction.

Complete preemption must be distinguished from ordinary preemption which serves as a substantive defense to state law claims.  Ordinary preemption — which includes express preemption, implied conflict preemption and implied field preemption — does not create federal jurisdiction.  Caterpillar, 482 U.S. at 393.

The differences between complete preemption and ordinary preemption are well-noted.  In Baldridge v. Kentucky-Ohio Transportation, Inc., the United States Court of Appeals for the Sixth Circuit stated:

> [In Whitman v. Raley, Inc.], [t]he Ninth Circuit drew a helpful distinction between "complete preemption" and "the substantive defense of preemption."
>
> According to Whitman, when a district court, considering the removal of a suit alleging state law violations, decides whether "Congress intended a preemptive force so powerful as to displace entirely any state cause of action within the ambit of the federal cause of action," the court is considering only a jurisdictional issue. The focus there is "on whether it was the intent of Congress to make the cause of action a federal cause of action and removable despite the fact that the . . . complaint identifies only state claims." This jurisdictional inquiry is distinct from the question whether a legal defense of preemption may be raised. Whether the defendant has a valid preemption defense "would be a matter for trial" by a court that has concluded it has jurisdiction over the case.  "If the court rules that the claim is not completely preempted, the

10

> federal court lacks jurisdiction to rule on
> the substantive preemption defense."

983 F.2d 1341, 1345-46 (6th Cir. 1993)(citing Whitman, 886 F.2d at 1180-81).

Based on the defendants' demurrer, we are only concerned with whether the complete preemption doctrine applies in this case. See TC MidAtlantic Dev., Inc. v. Commonwealth, 280 Va. 204, 214, 695 S.E.2d 543, 549 (2010)(only grounds stated in the demurrer may serve as a basis for granting the demurrer).

i.    The Circuit Court Erred by Dismissing the Employees' Claims for Lack of Jurisdiction

Here, the federal district court determined the employees' claims were not completely preempted by § 301 and it could not exercise its removal jurisdiction. It remanded to the circuit court to adjudicate the employees' state law claims. Following remand, the circuit court dismissed the state tort claims under the complete preemption doctrine, apparently holding it lacked jurisdiction to decide claims "arising under" federal law.

The majority of federal courts have held that remand orders have no preclusive effect on a state court's subsequent substantive decisions. See Nordan v. Blackwater Sec. Consulting, LLC, 460 F.3d 576, 590 (4th Cir. 2006)("[T]he district court's finding that complete preemption did not create federal removal jurisdiction will have no preclusive effect on a subsequent state-court defense of federal

11

preemption."); Whitman, 886 F.2d at 1182 (when a federal court remands to state court for lack of federal jurisdiction, "no rulings of the federal court have any preclusive effect on the substantive matters before the state court"). In Kircher v. Putnam Funds Trust, 547 U.S. 633, 647 (2006), the Supreme Court made clear that remand orders are only conclusive as to the determination of federal jurisdiction and a state trial court may not treat the remand as if it were an appellate court:

> While the state court cannot review the decision to remand in an appellate way, it is perfectly free to reject the remanding court's reasoning, as we explained over a century ago in Missouri Pacific Railway: "[A]s to applications for removal on the ground that the cause arose under the Constitution, laws, or treaties of the United States," the finality accorded remand orders is appropriate because questions of this character "if decided against the claimant" in state court are "open to revision . . ., irrespective of the ruling of the [federal court] in that regard in the matter of removal." Nor is there any reason to see things differently just because the remand's basis coincides entirely with the merits of the federal question; it is only the forum designation that is conclusive.

(Emphasis added; internal citations omitted.) Therefore, a federal district court's decision concerning its own jurisdiction is conclusive, and a state court is barred from reviewing it.

In this case, the circuit court implicitly determined that the employees' claims were completely preempted, that the

12

federal district court possessed exclusive jurisdiction, and

concluded that it consequently lacked jurisdiction:

> Having had the opportunity to review the pleadings and the arguments presented by all parties, the Court hereby GRANTS the Defendants' demurrer/plea in bar and dismisses the Plaintiffs['] claim[s]. . . . [A]llegations such as are before this Court, would require this judicial body to inquire as to what actions were taken and why, which would cast our net of inquiry squarely over the CBA.  This is flatly forbidden under superseding federal law. . . . It is for this reason that we must grant the demurrer/plea in bar.[4]

This was error.

Clearly, the circuit court possesses jurisdiction over

state law claims.  It remains to be answered whether a state

court may exercise jurisdiction over a case if it finds the

state law claims actually "arise under" federal law.

If the employees' claims are completely preempted, then,

by operation of law, they are transformed from state tort claims

to § 301 claims.[5]  State courts have concurrent jurisdiction to

---

[4] The defendants filed demurrers.  The circuit court inexplicably refers to the pleadings as demurrers/pleas in bar.

[5] We agree with the Courts of Appeal for the Ninth and Tenth Circuits that after a finding of complete preemption the substantive state law claim transmutes into a federal law claim. See Crull v. GEM Ins. Co., 58 F.3d 1386, 1392 (9th Cir. 1995); Carland v. Metro. Life Ins. Co., 935 F.2d 1114, 1119 (10th Cir. 1991), cert. denied, 502 U.S. 1020 (1991).  After a finding of complete preemption, state law claims need not be dismissed and re-filed as federal claims, because they already, by nature, "arise under" federal law.  See also Caterpillar, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted,

try § 301 claims.  Lingle, 486 U.S. at 403 (citing Charles Dowd Box Co. v. Courtney, 368 U.S. 502 (1962)).  If the employees had originally filed § 301 claims in state court, the circuit court would have possessed jurisdiction over those claims.  It is perfectly logical that the circuit court also possesses jurisdiction to try the employees' claims following remand – even if it subsequently determines the state tort theories actually state § 301 claims.  Therefore, the circuit court erred by dismissing the employees' claims, even if they were completely preempted.

Even though we conclude dismissal was an improper remedy, we must also address the circuit court's holding that the employees' well-pleaded fraud and negligent infliction of emotional distress claims "arose under" federal law.

ii.  The Employees' Claims Were Not Completely Preempted

We agree with the United States District Court for the Eastern District of Virginia that the employees' complaints do not give rise to § 301 claims.  In Allis-Chalmers Corp., the Supreme Court of the United States held that a state-law claim is transformed into a § 301 claim when it is "inextricably intertwined with consideration of the terms of the labor contract."  471 U.S. at 213.  State law claims are not

---

any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.").

14

completely preempted by § 301 when the state law "confers nonnegotiable rights on employers or employees independent of any right established by contract." Id. In Lingle, the Supreme Court further clarified that: "[a] purely factual question[]" about an employee's conduct or an employer's motives does not "require[] a court to interpret any term of a collective-bargaining agreement." 486 U.S. at 407. See also Hawaiian Airlines v. Norris, 512 U.S. 246, 261-62 (1994).

In this case, the employees' state tort claims are completely preempted only if they implicate "rights created by [the] collective-bargaining agreements," or their claims are "substantially dependent on analysis of [the] collective-bargaining agreement[s]." Caterpillar, 482 U.S. at 394 (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)); see also Allis-Chalmers, 471 U.S. at 220. Lingle directs courts to analyze § 301 preemption within the context of the elements of the state law claims. 486 U.S. at 403-07. Therefore, to resolve whether the employees' claims are within the complete preemptive reach of § 301, we must examine the elements of actual and constructive fraud and negligent infliction of emotional distress.

1. Fraud Claims

In Caperton v. A.T. Massey Coal Co., 285 Va. 537, 553, 740 S.E.2d 1, 9 (2013), we recited the elements of common law fraud:

15

"[A] false representation of a material fact; made intentionally, in the case of actual fraud, or negligently, in the case of constructive fraud; reliance on that false representation to [plaintiff's] detriment; and resulting damage." (Internal quotation marks omitted.) To establish fraud, "it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation." Metrocall of Delaware, Inc. v. Continental Cellular Corp., 246 Va. 365, 374, 437 S.E.2d 189, 193-94 (1993). Additionally, in Caperton, we concluded that "[f]raudulent misrepresentation shares none of the elements of a breach of contract action, and the evidence required to support each claim is, therefore, manifestly different." 285 Va. at 553, 740 S.E.2d at 9.

"Lingle teaches that. . . whether the employer's actions make out the element[s] of [fraud] under state law -- is a 'purely factual question.'" Hawaiian Airlines, 512 U.S. at 266 (quoting Lingle, 486 U.S. at 407). Verizon and the CWA argue that we must interpret the CBA to determine whether there was a surplus and whether the employees were terminated in accord with the CBA. Verizon asserts that its initial representation to the employees is only false if there was actually no surplus according to the terms of the CBA. In contrast, the employees contend their allegations of Verizon's statement and counter-

16

statement can prove fraudulent conduct without any reference to the CBA.  We must decide whether the employees, based on their factual allegations, can prove the elements of fraud without requiring analysis of the CBA.  In this case, only the falsity and reasonable reliance elements are in dispute.

### a. Falsity of the Representation

The employees allege that "[o]n June 15, 2010 plaintiff[s] [were] told by each of the defendants that [their] employment was in serious jeopardy and that a decision would have to be made by June 16, 2010 regarding whether or not [they] would accept the EISP or be terminated in August, 2010." The employees also pled:

> Subsequent to the plaintiff[s'] termination[s], Verizon, before the Virginia Employment Commission, took the position that plaintiff[s'] job[s] [were] not surplus, that [their] job[s were] not in jeopardy and that [their] termination was voluntary.
>
> Almost immediately after plaintiff[s were] terminated, Verizon recalled 84 technicians who had previously been removed and brought in technicians from outside the area to meet its needs.
> . . . .
> Shortly after plaintiff[s'] termination[s], Verizon advertised for an unprecedented 200 technicians to transfer to the Potomac Region where plaintiff[s] had been employed.

Finally, the employees claim "the defendants misrepresented material facts, knowingly and intentionally [or negligently],

17

[and] caus[ed] the plaintiffs to operate under a set of beliefs originating with each defendant that [they] had no choice but to accept the EISP or be terminated from [their] employment."

Whether Verizon had a contractual right under the CBA to declare a surplus and terminate the employees is not before us. The issue is whether Verizon and the CWA knowingly or negligently misrepresented material facts to induce the employees' resignations. The gravamen of this inquiry is the veracity of the statements. We conclude that if the plaintiffs' allegations are proven at trial, a trier of fact could resolve the falsity element without any reference to the CBA.

In her dissent, Justice McClanahan declares that falsity cannot be proven without referencing the CBA. She posits that the defendants could have believed that the employees' jobs were in jeopardy at the time they made their representation. She further speculates that Verizon's purported testimony before the Virginia Employment Commission could have been based on its subsequent knowledge that the shortage had been alleviated through voluntary attrition.

The employees pled that: (1) the defendants stated their jobs were "in serious jeopardy," and (2) Verizon then testified before the Virginia Employment Commission that the employees' jobs were "not in jeopardy." The employees also pled that shortly after claiming a surplus and terminating the employees,

Verizon "recalled 84 technicians who had previously been removed [,] brought in technicians from outside the area to meet its needs" and subsequently "advertised for an unprecedented 200 technicians to transfer to the Potomac Region where plaintiff[s] had been employed."  At the demurrer stage, we are obligated to accept the truthfulness of these allegations and are not permitted to construct alternative factual scenarios to test the plaintiffs' allegations.  Steward, 284 Va. at 286, 726 S.E.2d at 253.

The employees' allegations of a false representation are sufficient to survive demurrer.  The employees' complaint contained Verizon's two conflicting statements: (1) Verizon initially represented to the employees that their jobs were in serious jeopardy and they would be terminated if they did not accept the EISPs, and (2) Verizon subsequently represented to the Virginia Employment Commission that the employees' jobs were not in jeopardy and they voluntarily resigned.  The employees' additional allegations, including that Verizon rehired and transferred workers into the region and advertised openings for 200 technicians shortly after terminating the employees, support an inference that the initial statement that Verizon made on June 15, 2010 was false.

      b. Reliance

19

The employees allege they would have never accepted the EISPs in the absence of the misrepresentation:

> The plaintiff[s] accepted the EISP package because of the representations made by each of the defendants . . . that if they did not do so, they would receive significantly fewer or no benefits after their termination by Verizon.

> The plaintiff[s] had no intention of accepting the EISP package before being told by the defendants that they were going to be terminated.
> . . . .

> The plaintiff[s], operating under a set of beliefs originating with each of the defendants, felt [t]he[y] had no choice but [to] accept the EISP and acted upon those beliefs and representations to [their] detriment.

> . . . .

> The plaintiff[s]relied upon such misrepresentations to [their] detriment causing [them] to sustain substantial financial losses and damages.

The employees clearly pled that they relied on the defendants' statements in making their decisions to accept the EISPs.

Justice Powell's dissent maintains that the element of reliance cannot be proven without referencing the CBA's term "surplus" and its provisions regarding termination. She notes that the employees had access to the CBA and posits that the employees could have used their understanding of the CBA to

20

detect the defendants' fraud.  However, this case is not about whether Verizon complied with the CBA's provisions for addressing a surplus, but whether Verizon intentionally, and CWA negligently, stated that the employees' jobs were in jeopardy and that if the employees failed to accept the EISP, they would receive fewer or no benefits after termination.

The common error shared by the dissents is "[the] failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement."  Caterpillar, 482 U.S. at 396 (emphasis in original).  In this case, based upon the pleadings, Verizon's statement and counterstatement render interpretation of the CBA's terms unnecessary.  See, e.g., Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 25 n.28 (1983) ("[E]ven under § 301 we have never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that section. For instance, a state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract.").  Like the irrelevance of the contractual meaning of "strike" in a suit for battery, a trial court, viewing the allegations in this case, is not required to decide whether there was a "surplus"

21

under the terms of the CBA or whether Verizon was complying with its contractual obligations under the CBA.

Viewing the well-pleaded allegations in these complaints as true, we conclude the employees stated claims for fraud based on facts outside the scope of the CBA. Therefore, we hold the employees' well-pleaded fraud claims were not completely preempted by § 301 of the LMRA.

2. Negligent Infliction of Emotional Distress Claim

In Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 137-38, 523 S.E.2d 826, 833-34 (2000), this Court discussed the elements of a claim for negligent infliction of emotional distress under Virginia law:

> We adhere to the view that where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone. We hold, however, that where the claim is for emotional disturbance *and* physical injury resulting therefrom, there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.

(Internal quotation marks and citations omitted and emphasis in original.) In this case, Ricky Rosser's negligent infliction of

22

emotional distress claim is based on Verizon and the CWA's allegedly fraudulent conduct. The underlying facts supporting Rosser's emotional distress claim are the same as those supporting the fraud claims. Accordingly, the allegation of emotional distress contained in Rosser's complaint is also outside the scope of the CBA — and therefore is not completely preempted.

### III. Conclusion

The circuit court erred in holding that the employees' claims were completely preempted by § 301 of the LMRA and by dismissing those claims. We will reverse the circuit court's judgment and will remand this case for further proceedings in accordance with this opinion.

<u>Reversed and remanded.</u>

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

The circuit court held that the employees' claims are completely preempted by Section 301 of the Labor Relations Management Act of 1947 ("LMRA"), 29 U.S.C. § 185, and, on this basis, dismissed their suits. I agree with the majority that dismissal was an improper course of action and that the circuit court has concurrent jurisdiction to try the employees' claims if they are completely preempted. I dissent from the majority's

23

review of complete preemption and conclude that because the employees' claims require interpretation of a collective bargaining agreement they are completely preempted by Section 301.

All of the employees sue for fraudulent misrepresentation, one element of which requires the employees to prove that the defendants' representation was false.[1]  Caperton v. A.T. Massey Coal Co., 285 Va. 537, 553, 740 S.E.2d 1, 9 (2013) (quoting Klaiber v. Freemason Assocs., Inc., 266 Va. 478, 485, 587 S.E.2d 555, 558 (2003)).  The alleged misrepresentation in this case was the defendants' statement to the employees that their jobs were in serious jeopardy.  As counsel for the employees stated at oral argument, the allegation in the complaints supporting this element is that after the employees agreed to early termination, Verizon later told the Virginia Employment Commission that the employees' jobs were not in jeopardy.  In an apparent attempt to avoid preemption, the employees have tailored the face of their complaints to exclude interpretation of a collective bargaining agreement, and in most cases, under the well-pleaded complaint rule, whether a claim arises under federal law depends only on whether "a federal

---

[1] As noted in the majority opinion, plaintiff Ricky Rosser's negligent infliction of emotional distress claim is based on the defendants' alleged fraudulent conduct.  Thus, this claim likewise will require him to prove that the defendants' representation was false.

question is presented on the face of the plaintiff's properly pleaded complaint."  See Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)).

But Section 301 of the LMRA is one of three federal statutes that the Supreme Court of the United States has held completely preempts state-law claims.  Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005).  "The doctrine of complete preemption . . . . recognizes that some federal laws evince such a strong federal interest that, when they apply to the facts underpinning the plaintiff's state-law claim, they convert that claim into one arising under federal law."  Barbour v. International Union, 640 F.3d 599, 629 (4th Cir. 2011) (Agee, J., concurring); Caterpillar Inc., 482 U.S. at 393; Lontz, 413 F.3d at 441.  Complete preemption is an exception to the well-pleaded complaint rule, Lontz, 413 F.3d at 439, and thus Section 301 may completely preempt an action even where the complaint is tailored to allege only a state-law claim.  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983). Consequently, a court must look beyond the face of the complaint to determine whether the claim "requires the interpretation of a collective-bargaining agreement" and is therefore completely preempted by Section 301.  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 410, 413 (1988) (discussing the

25

Court's complete preemption analysis in a previous case, where it "began by examining the collective-bargaining agreement"); Foy v. Giant Food Inc., 298 F.3d 284, 287 (4th Cir. 2002); McCormick v. AT&T Techs., Inc., 934 F.2d 531, 534 (4th Cir. 1991).

It is clear from the record in this case that the employees must ask the court to interpret a collective bargaining agreement in order to prove that the defendants' representation was false.

Around the time Verizon declared an employee surplus, Verizon and CWA entered into a Memorandum of Agreement ("MOA"), a collective bargaining agreement that detailed the conditions in which Verizon would either retain or terminate the surplus employees. See 29 U.S.C. § 185(a) (applying to "contracts between an employer and a labor organization"). Under Section VIII of the MOA, Verizon offered early termination incentive packages not only to surplus employees (which included these employees) but also to non-surplus employees. Section VI of the MOA explains that if at least 12,000 combined surplus and non-surplus employees accepted the early termination incentive packages, no post-August 2, 2003 hires (which included these employees) would be laid off. Thus, the prospect of the employees being terminated to relieve the surplus was a function of the arrangement set out in the MOA, and in turn, the truth or

falsity of the defendants' representation to the employees regarding the security of their positions depends on the terms of the MOA.

The majority asserts that Verizon's statement to the Virginia Employment Commission necessarily renders false the defendants' earlier statement to the employees. Looking to the MOA, it is clear that Verizon's statement to the Virginia Employment Commission does not necessarily prove the falsity of the defendants' earlier statement to the employees.

The MOA opened the possibility that the surplus would be cured in part by non-surplus employees accepting early termination, which in turn would spare these employees from layoff. The defendants' alleged misrepresentation to the employees was made before the deadline for accepting early termination, and thus the defendants' statement was their evaluation of the employees' job security based on the defendants' knowledge at that time. Verizon's statement to the Virginia Employment Commission was made months after the deadline with knowledge of the number of employees who in fact accepted early termination. Rather than conflicting, the defendants' statements may be explained instead as the defendants' truthful prediction of the employees' job security given their *ex ante* knowledge and Verizon's relay of information to the Virginia Employment Commission that enough early

27

terminations were in fact accepted that these employees would have been spared layoff.[2]  Thus, even if the employees' allegations are true, these allegations do not necessarily prove the falsity of the defendants' representation to the employees. Instead, the employees must carry their burden and prove the independent falsity of the defendants' representation, which as discussed above requires the interpretation of the MOA.  This conclusion is not the product of speculation, but rather recognition of the inevitable issues and evidence in the case.

Because proving the defendants' representation was false "requires the interpretation of a collective bargaining agreement," Section 301 completely preempts the employees' claims.  Lingle, 486 U.S. at 405–06; Foy, 298 F.3d at 287; McCormick, 934 F.2d at 534.  After reversing the circuit court's dismissal of the employees' suits, I would affirm the circuit court's holding that Section 301 completely preempts the employees' claims and remand for further proceedings.

---

[2] Because the factual details underlying these events were not included in the record, and a determination regarding the truthfulness of the allegations is beyond the scope of this appeal, I make no judgment about these matters.

28

JUSTICE POWELL, concurring in part and dissenting in part.

I agree with the majority's holding that the circuit court erred in dismissing the employees' claims. I also agree with Justice McClanahan's conclusion that complete preemption constitutes an exception to the well-pleaded complaint rule. However, I write separately because I do not believe the employees can demonstrate the reasonable reliance required to support a fraud claim under Virginia law without judicial analysis of the collective bargaining agreements.[*] As a result, the employees' state law claims are completely preempted by § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

A tort action grounded in state law may be preempted by § 301 of the LMRA where the claim depends upon analysis of the collective bargaining agreement between the parties. Williams v. National Football League, 582 F.3d 863, 874 (8th Cir. 2009). In Williams, the United States Court of Appeals for the Eighth

---

[*] The majority notes that the plaintiffs alleged reliance on the defendants' representations. However, the question is not merely whether the plaintiffs relied on statements made by the defendants, but also whether that reliance was reasonable under the circumstances. Metrocall of Delaware, Inc. v. Continental Cellular Corp., 246 Va. 365, 374, 437 S.E.2d 189, 193-94 (1993). To ascertain the reasonableness of the plaintiffs' reliance on these statements, a court must interpret the collective bargaining agreements.

Circuit held that the plaintiffs' claims of fraudulent misrepresentation, brought under Minnesota law, were preempted by § 301 of the LMRA because the plaintiffs could not "demonstrate the requisite reasonable reliance to prevail on their claims without resorting to the [collective bargaining agreements]." Id. at 881. In Minnesota, claims of fraudulent misrepresentation require plaintiffs to show that they reasonably relied on the alleged misrepresentation. Id. at 881–82 & n.14. The Williams court noted that, "[w]hether a plaintiff's reliance was justifiable is determined in light of the specific information and experience it had." Id. at 882 (quoting Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 331 (8th Cir. 2006)). Furthermore, in determining whether the plaintiff justifiably relied on the alleged misrepresentations, the court noted that

> the trier of fact would have to determine whether the contractual language in the [collective bargaining agreement] was ambiguous enough for a layman reasonably to believe that it was not contrary to the representations on which [the plaintiff] claims it relied. This would require the trier of fact to examine the provisions in [the collective bargaining agreement].

Williams, 582 F.3d at 882 (quoting Superior Waterproofing, 450 F.3d at 332).

The facts of this case are analogous to those considered by

the Eighth Circuit. As in Minnesota, in Virginia a plaintiff asserting fraudulent misrepresentation must establish "the right to reasonably rely upon the misrepresentation." Metrocall of Delaware, Inc. v. Continental Cellular Corp., 246 Va. 365, 374, 437 S.E.2d 189, 193-94 (1993). Reasonable reliance exists where the defrauded party not only believes the statement, but is "so thoroughly induced by it that, judging from the ordinary experience of mankind, in the absence of it he would not, in all reasonable probability, have entered into the contract or other transaction." American Surety Co. v. Hannah, 143 Va. 291, 301, 130 S.E. 411, 414 (1925).

In this matter, the employees claim that they relied on the defendants' assertions that there was a "surplus" of employees, that their employment was "in serious jeopardy," and that the employees could either accept the EISP or be terminated in August, 2010. Furthermore, the employees claim that they were induced to voluntarily terminate their employment, and accept the EISP by the defendants' representation that, if they chose not to accept the EISP, they would receive "significantly fewer or no benefits after [their] termination by Verizon."

The reasonableness of the employees' reliance on these representations cannot be evaluated without interpreting the collective bargaining agreements that govern the employment relationship between the parties. The collective bargaining

agreements delineated Verizon's ability to terminate employment, provided additional employment protection to more senior employees, and guaranteed separation benefits upon termination. To determine whether the employees had the right to rely on oral representations made by the defendants, a fact finder would first need to determine which protections an employee enjoyed under the collective bargaining agreements; second, whether Verizon's representations conflicted with the collective bargaining agreements; and finally, whether it was reasonable for the employees to rely on Verizon's oral representations, even where those oral representations violated the written guarantees contained in the collective bargaining agreements. Accordingly, I would hold that the employees' state law claims are substantially dependent upon analysis of the collective bargaining agreements, and are therefore preempted by § 301 of the LMRA.